**UNITED STATES of America,**
**Plaintiff-Appellee,**

**v.**

**Charles Tony BENNETT, Defendant-**
**Appellant.**

**No. 25139.**

United States Court of Appeals,
Ninth Circuit.

July 26, 1971.

Clarence Melvin Minor, filed brief pro se.

Bert C. Hurn, U. S. Atty., and Frederick O. Griffin, Jr., Asst. U. S. Atty., Kansas City, Mo., filed brief for appellee.

Before ALDRICH,\* LAY and BRIGHT, Circuit Judges.

\* Of the First Circuit, sitting by designation.

napped from their car at gun point by three men. The girls were put in the car of the three men, and the boys were put in its trunk. While the three men drove around in their car for about four hours, they threatened the boys and girls and repeatedly committed acts of rape on the girls. During this time, the boys were temporarily let out of the trunk at one of the several stops made where Steve was struck by one of the men. The men eventually stopped their car on land subsequently identified as federal property where the last acts were committed before the four were released. No contention is made as to lack of federal jurisdiction.

Craig G. Davis (argued), Belligham, Wash., for defendant-appellant.

J. S. Obenour, Asst. U. S. Atty. (argued), Stan Pitkin, U. S. Atty., Tacoma, Wash., for plaintiff-appellee.

Before BROWNING and CARTER, Circuit Judges, and SMITH,* District Judge.

JAMES M. CARTER, Circuit Judge:

Appellant and his two brothers were each convicted and sentenced to long terms for assault with intent to commit rape, in violation of 18 U.S.C. §§ 2, 113(a) and rape, in violation of 18 U.S. C. §§ 2, 2031, committed while on a government reservation. Only appellant has appealed, raising the issues of (1) whether his conviction resulted from impermissibly suggestive photographic identification and (2) whether some source of names in addition to a voter list should have been prescribed by the district court's plan for random selection of the jury panel. We find appellant's contentions without merit and affirm his conviction.

On January 24, 1969, at about 11 P.M. two sisters, Betty, age 15, and Debra, age 17, and their dates, Steve and Royall, age 17 and 20 respectively, were kid-

## I.

From their recollection of the offenses, both girls and Steve identified in court appellant and his two brothers, Douglas and Dennis Bennett, as the three men who committed the offenses. We reject appellant's contention that this testimony must be discarded under the following standard of Simmons v. United States, 390 U.S. 377, 384, 88 S. Ct. 967, 971, 19 L.Ed.2d 1247 (1968):

"[W]e hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

After statements were taken from the victims on January 25, concurrent investigations in which photographic identification was utilized were undertaken by local law enforcement authorities and the F.B.I. On January 28, Deputy Sheriff Suprunowski went to the residence of the girls and separately showed them seven photographs, which did not include any of the defendants. None of these photographs was identified by the girls

---

* Honorable Russell E. Smith, Chief Judge, United States District Court, District of Montana, sitting by designation.

or by Steve when he saw them on the following day. On January 30, Deputy Sheriff Suprunowski returned to the girls' residence and separately showed them eight photographs. Debra said that a two year old picture of appellant with a goatee looked like one of the men except for the goatee. Betty said that another picture resembled one of the men.

On February 5, Special Agent Girard of the F.B.I. showed Debra 123 photographs in which he placed as #3, a recent one of appellant. Debra identified the #3 picture of appellant, and the #44 picture, of appellant's brother Dennis. Since Betty had not been home during Special Agent Girard's visit, Deputy Sheriff Suprunowski on this same day, went to the girl's residence and showed her nine pictures including those of appellant, appellant's brother Dennis and appellant's brother Roosevelt. Betty identified the #7 picture, of appellant, and the #9 picture, of Dennis, as did Debra when she separately saw the photographs.

On February 6, Deputy Sheriff Suprunowski separately showed seven more photographs to the girls and Steve, who all identified the #1 picture, of appellant's brother Douglas. On February 11, Special Agent Girard interviewed Betty for the first time and showed her photographs of all three defendants, which she had previously identified, for the purpose of identifying who she was referring to in her statement. Finally on February 12, Special Agent Girard showed the 123 photographs to Steve and Royall who did not make an identification.

On the basis of the identifications of appellant and his brothers, federal prosecution was undertaken. A complaint was signed and warrants were issued on February 14, 1969. Appellant was finally apprehended living under a fictitious name on July 15, 1969.

■ We hold, under the facts of this case, analyzed in light of the factors suggested by *Simmons,* that the identification procedure employed was not so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

First, it was necessary to resort to photographic identification in the investigation of the crime. The victims saw no photographs of appellant or the other defendants after they were identified as suspects in February, 1969. The trial commenced seven months later in September 1969.

Second, there is little chance, for several reasons, that the procedure utilized in this case led to misidentification of appellant. The circumstances of the crime gave the witnesses sufficient opportunity to observe appellant over a four hour period. The witnesses saw the photographs within two weeks of the crime. The procedure utilized did not significantly emphasize or suggest any picture. The authorities did not verbally emphasize any of the photographs, and each witness viewed them out of the presence of other witnesses. At least seven and as many as 123 photographs were shown to each witness at each viewing, except when Betty was shown only photographs of the three suspects, whom she had previously identified. Appellant argues that impermissible suggestion resulted from the form in which his photograph was displayed in the 123 that Special Agent Girard showed Debra on February 5 in that his picture was the third and the only one with a single view. We think that the form of appellant's picture and the place it took in the array was not significant here, especially since Debra also picked out a multiple view picture of appellant's brother Dennis in the #44 position.

Finally, both girls and Steve identified all three defendants, including appellant, through their testimony at trial. Royall identified only the defendant Douglas Bennett. No photographs were shown to the four witnesses at any time after the original identification in February 1969. They were permitted to read their own statements given on Jan-

uary 25, prior to trial, but were shown no pictures. The testimony indicated that the identifications made in the court room were based on what had happened to the witnesses on the night that the offenses were committed. Their testimony was substantiated by the defendants' actual appearance and other evidence received at the trial.

## II.

Appellant contends that he was denied a properly constituted jury panel —one lacking in Negroes—because there was no source of names for the panel in addition to voter lists. One Negro had been selected for the smaller panel from which the jury was to be drawn but was excused when he was admitted to a hospital the day before the trial started.

28 U.S.C. § 1863(b) (2) provides that a district court's plan for random jury selection "shall prescribe some other source or sources of names in addition to voter lists where necessary to * * * protect the rights secured by sections 1861 and 1862 of [Title 28]." § 1861 provides that "all citizens shall have the opportunity to be considered for service on grand and petit juries in the district courts of the United States." § 1862 provides, "No citizen shall be excluded from service as a grand or petit juror in the district courts of the United States on account of race, color, * * * or economic status."

Appellant argues that § 1863(b) (2) required a means for jury panel selection here other than voter lists because not all citizens are on such lists and those that are not deprived of their opportunity to serve on a jury, in violation of § 1861. The implication of appellant's argument, that jury panel selection from voter lists is never appropriate, is not contemplated by § 1863(b) (2), which provides that other sources are required only where necessary to preserve certain rights. § 1861 gives litigants a right to "juries selected at random from a fair cross section of the community," not from all citizens. § 1861 provides that all citizens shall have the opportunity to be considered for jury service, which they have under the plan employed by the district court in this case, by registering to vote, an act not alleged to be inhibited here.

Appellant also argues that § 1863(b) (2) requires a means for jury selection other than voter lists because such lists produce discrimination in violation of § 1862 in that Negroes are poor and the poor are less likely to vote because of frequent residence changes. Appellant's contentions are unsupported by any showing of a discriminatory purpose or effect of the jury selection plan utilized in this case. They are bare assertions that no Negro sat on the jury. We reject his suggestion that we take judicial notice of the facts essential to this argument.

The judgment is affirmed.