**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Charles Thomas JAMES, Jr., Defendant-**
**Appellant.**

**No. 71–1855.**

United States Court of Appeals,
Ninth Circuit.

Dec. 30, 1971.

Ted E. Runstein (argued), Christopher P. Thomas, Portland, Or., for defendant-appellant.

Donald Upjohn, Asst. U. S. Atty., (argued), Sidney I. Lezak, U. S. Atty., Tommy Hawk, Asst. U. S. Atty., Portland, Or., for plaintiff-appellee.

Before BROWNING and KILKENNY, Circuit Judges, and JAMESON,* District Judge.

JAMESON, District Judge:

Appellant was convicted, after jury trial, on three counts charging him with violating 18 U.S.C. § 111 by forcibly assaulting, resisting and opposing three F.B.I. agents while they were engaged in the performance of official duties. The charges arose out of an altercation between members of appellant's family and four F.B.I. agents on January 4, 1971 when the agents were attempting to apprehend appellant for being absent without leave from the Navy.

Appellant claims error in (1) the refusal of the court to allow his challenge for cause of two prospective jurors; (2) the admission in evidence, over objection, of a rolling pin used by appellant's sister in the altercation; and (3) the court's refusal to allow a challenge to the array of the trial jury.

### Challenges for Cause

One of the jurors challenged for cause was the sister-in-law of a detective on the police force in Corvallis, Oregon, whom she saw a "couple of times a year." The other was the wife of a department store security officer in Portland, Oregon.[1] Appellant argues that since the prosecution's case was based solely on the testimony of F.B.I. agents concerning a crime against the agents, the close relative of any law enforcement officer should be excused for cause.

■■ The mere fact that a relative of a juror may have been an officer in an unrelated agency of law enforcement is not sufficient to disqualify a juror in the absence of a showing of bias.[2] It is recognized that the trial judge should carefully interrogate the juror to determine whether there is evidence of bias. The transcript reveals that the trial judge was meticulous in his examination of all of the prospective jurors and particularly those who were related to any law enforcement officer. There was no request by appellant's counsel for further interrogation. The district court did not abuse its discretion in refusing to excuse the two jurors for cause.[3]

### Admission of the Rolling Pin

The rolling pin was not used by appellant but was used by his sister to strike Agent Phelps. Appellant objected to its admission on the ground of relevancy. In receiving the exhibit the court indicated that he considered it relevant as a "part of what was going on." [4]

---

* Honorable William J. Jameson, United States Senior Judge, Billings, Montana, sitting by designation.

1. Neither of these prospective jurors sat on the case. Both were excused on appellant's peremptory challenges.

2. Appellant recognizes that under United States v. Wood, 1936, 299 U.S. 123, 57 S.Ct. 177, 81 L.Ed. 78, and Frazier v. United States, 1948, 335 U.S. 497, 69 S.Ct. 201, 93 L.Ed. 187, the relatives of a law enforcement officer would not per se be disqualified as a juror, but argues that under the "particular issues and circumstances" of this case the district court should have sustained the challenges.

3. Appellant argues further that the sister-in-law of the Corvallis police officer should have been excused for cause because when asked if she felt there would be advantage to the side having police officers as witnesses, she "stated, after hesitation, 'I don't think so.'" This objection was specifically considered by the district court, who had the opportunity of observing the prospective juror's bearing and demeanor. He found that she was "being perfectly honest" when she stopped and thought a minute on this question. Moreover, the court did in fact sustain challenges for cause to relatives of other police officers who he felt might "be influenced" to give undue weight to the testimony of a police officer.

4. The following colloquy occurred between the court and appellant's counsel, in the presence of the jury:

"The Clerk: No. 4 will be received.

Appellant admitted kicking Agent Phelps.[5] He contended that he did so only in response to an unprovoked attack by Phelps on appellant's younger brother David and that kicking Phelps was reasonable force necessary to protect David from serious bodily harm. The F.B.I. agents, however, testified that appellant kicked Phelps after he had been "floored" by appellant's sister with a blow from the rolling pin. Under these circumstances the rolling pin was relevant evidence. There was no error in its admission.

### Challenge to the Panel

Appellant challenged the jury panel on the ground that "the jury was not a representative cross section of the community as blacks and poor people were absent from the panel." Jurors in the District of Oregon are selected at random from voter registration lists under a plan adopted by the court pursuant to 28 U.S.C. § 1863, a part of the Jury Selection and Service Act of 1968. In United States v. Parker, 1970, 428 F.2d 488, 489, cert. den. 1970, 400 U.S. 910, 91 S.Ct. 155, 27 L.Ed.2d 150, we recognized that a defendant has the burden of showing a "systematic exclusion of any identifiable group within the community"[6] and held that, "The use of voter registration lists as the sole source of the names of potential jurors is not constitutionally invalid, absent a showing of discrimination in the compiling of such voter registration lists."[7]

It is clear that the jury in this case was selected in the manner prescribed by the plan adopted by the District Court of Oregon and approved by this court. Appellant did not offer any proof of discrimination in the compilation or use of the voter registration lists or of systematic exclusion of any identifiable group within the community.[8] There was no "showing of a discriminatory purpose or effect of the jury selection plan utilized in this case." United States v. Bennett, 445 F.2d at 641.

In any event, appellant did not comply with the provisions of Section 1867(d) of the Jury Selection and Service Act of 1968. Under that section in order to dismiss an indictment on the ground of substantial failure to comply with the Act, a defendant's motion must contain "a sworn statement of facts which, if true, would constitute a substantial failure to comply with the provisions of this title * * *." Section 1867(e) provides that, "The procedures prescribed by this section shall be the exclusive means by which a person accused of a Federal crime * * * may challenge any jury on the ground that such jury was not selected in conformity with the provisions of this title." No "sworn statement" or testimony under oath was submitted to support appellant's contentions.[9]

Appellant has failed to show that the jury selection plan used in this case is constitutionally invalid or that it is not in compliance with the provisions of the Jury Selection and Service Act of 1968.

Affirmed.

---

"Mr. Runstein: With the understanding that nothing tied that up to my client using it.

"The Court: Well, that's right. Nobody said he had used it, but it's apparently part of what was going on."

5. This formed the basis of count I of the indictment. Appellant denied assaulting Agents Scobie and Bittner which were the bases of counts II and III.

6. See Swain v. Alabama, 1965, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759; Bloomer v. United States, 9 Cir. 1969, 409 F. 2d 869, 872.

7. See also United States v. Bennett, 9 Cir. 1971, 445 F.2d 638, 641.

8. Appellant relies upon argument of his counsel before the trial court and remarks of the court in a colloquy with counsel.

9. Moreover, the challenge was not made until after voir dire examination had started. § 1867(a) provides that the motion must be made before the voir dire examination begins.