**UNITED STATES of America**

v.

**John N. MITCHELL et al.**

**Crim. No. 74–110.**

United States District Court, District of Columbia.

July 9, 1974.

Leon Jaworski, Sp. Prosecutor, Philip A. Lacovara, Counsel to Sp. Prosecutor, James F. Neal, Sp. Asst. to Sp. Prosecutor, Richard Ben-Venisté, Peter F. Rient, George T. Frampton, Jr., David H. Kaye, Richard D. Weinberg, Jill Wine Volner, Asst. Sp. Prosecutors, Washington, D. C., for the Government.

William G. Hundley, Plato Cacheris, Washington, D. C., for Mitchell.

John J. Wilson, Frank H. Strickler, Ross O'Donoghue, George A. Fisher, Co-counsels, Washington, D. C., for Haldeman.

William Snow Frates, Andrew C. Hall, Miami, Fla., for Ehrlichman.

Sidney Dickstein, Kenneth L. Adams, Washington, D. C., for Colson.

David G. Bress, Thomas C. Green, Washington, D. C., for Mardian.

Jacob Stein, Edmund D. Campbell, Co-counsel, Washington, D. C., for Parkinson.

John M. Bray, Francis X. Lilly, Washington, D. C., for Strachan.

## MEMORANDUM ORDER

SIRICA, District Judge.

### I. MOTIONS TO DISMISS

(1) *Motion to dismiss for the alleged unlawful extension of the grand jury term:*

Defendants in this motion argue that Congress was without authority to extend the term of the June 5, 1972 grand jury by the simple enactment of a statute, Public Law 93–172, 87 Stat. 691 (November 30, 1973). Pursuant to Rule 6(g) of the Federal Rules of Criminal Procedure, the June 5, 1972 grand jury that returned the indictment herein, would have expired on December 4, 1973. Prior to that deadline, however, Congress enacted the above-referenced law extending the grand jury term to June 4, 1974 subject to another six-month extension. It was during this initial extension that, on March 1, 1974, the instant indictment was returned.

■ Defendants contend that Congress' 18 U.S.C. § 3771 delegation of power to the Supreme Court to prescribe rules of criminal procedure left the Congress without authority to amend or modify any of the rules so promulgated by the Court once accepted.

■■ The Supreme Court's power to prescribe rules of procedure exists only in the absence of Congressional enactments. See Palermo v. United States, 360 U.S. 343, 353, n. 11, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959). The Court can discern nothing that restricts the power of Congress to repeal, amend, or supersede its delegation of authority under 18 U.S.C. § 3771 or the rules of pro-

cedure themselves. The delegation under § 3771 was not so extensive and final that Congress must either revoke the section or wait for the Supreme Court to propose changes before it can modify the federal rules. Changes may be effected at any time by statute. See, Hawkins v. United States, 358 U.S. 74, 78, 79 S.Ct. 136, 3 L.Ed.2d 125 (1958); Government of Virgin Islands v. Parrott, 476 F.2d 1058 (3rd Cir.), cert. denied, 414 U.S. 871, 94 S.Ct. 97, 38 L. Ed.2d 90 (1973); United States v. Berrigan, 482 F.2d 171, 176 (3rd Cir. 1973); United States v. Marrero, 450 F.2d 373 (2nd Cir. 1971), cert. denied, 405 U.S. 933, 92 S.Ct. 991, 30 L.Ed.2d 808 (1972); United States v. Isaacs, 351 F.Supp. 1323, 1328 (N.D.Ill.1972), aff'd 493 F.2d 1124 (7th Cir. 1974).

The motion to dismiss for alleged unlawful extension of the grand jury is denied.

(2) *Motions to dismiss because of the presence of allegedly unauthorized persons in the grand jury room:*

Defendants move to dismiss the indictment on the ground that during portions of the grand jury proceedings that led to this indictment, an unauthorized person was present in the grand jury room. The basis for this claim is that James F. Neal, Special Assistant to the Special Prosecutor, did not file the required letter of appointment and oath with the Clerk of the Court prior to his initial appearance before the grand jury, and that Mr. Neal allegedly violated federal conflict of interest statutes during his prior tenure with the Watergate Special Prosecution Force. Additionally, defendant Strachan asserts that the verbatim publication of his grand jury testimony in April, 1973 in the *Washington Post* indicates the "actual or constructive" presence of an unauthorized person during his appearance before the grand jury.

■ As regards the first claim, defendants do not contest the fact that Mr. Neal was duly appointed by At-

torney General Elliott Richardson with authority to conduct grand jury proceedings and that he executed a sworn oath of office on May 29, 1973, well before his first appearance before the grand jury. It is clear that no statute or administrative regulation requires the filing of the oath of office with the Clerk of the Court to make the oath valid, and the fact that everything except the actual filing was accomplished here vitiates the defendants' objection.

■ Mr. Neal's participation in the grand jury investigation is also attacked on the ground that upon becoming a member of the Special Prosecution Force he did not terminate his law firm practice, and has thereby violated the conflict of interest provisions of 18 U.S. C. § 203. Even assuming a conflict of interest situation however, it is admitted that Mr. Neal did not serve more than 60 days prior to the return of the indictment. He thus qualifies for the exemption proviso of § 203. Furthermore, the copies of Attorney General Richardson's letter and opinion and the memorandum prepared by his office which are filed in the record show that the possible conflict of interest problem was carefully considered by the Department of Justice and found to be nonexistent. Though not binding on the Court, this determination is equally if not more persuasive than the defendants' contention.

■ The claim of "actual or constructive" presence of an unauthorized person is without substance.

The motions to dismiss based on allegations that an unauthorized person or persons were present in the grand jury room are denied.

(3) *Motions to dismiss for alleged multiplicity and duplicity:*

■ Several defendants maintain that count one of the indictment alleges separate and distinct conspiracies. A review of the indictment, however, suggests that the charge, rather than citing several conspiracies, alleges a single continuous conspiracy to obstruct justice and defraud the United States whose objects were numerous and varied extending over some period of time. Further, an indictment that charges in a single count both conspiracy to defraud and conspiracy to commit offenses is not duplicitous, since "neither a multiplicity of objects nor a multiplicity of means converts a single conspiracy into more than one offense." May v. United States, 84 U.S.App.D.C. 233, 175 F.2d 994, 1002, cert. denied 338 U.S. 830, 70 S.Ct. 58, 94 L.Ed. 505 (1949); United States v. Manton, 107 F.2d 834, 838 (2nd Cir. 1939), cert. denied 309 U.S. 664, 60 S.Ct. 590, 84 L.Ed. 1012 (1940).

■ The argument is also made that the indictment is multiplicitous and should be dismissed since it spreads one offense over several separate and distinct counts. While it is true that the twelve substantive offenses charged are among the objects of the alleged conspiracy, it must be recognized that a conspiracy to commit an offense and the actual commission of that offense are separate and distinct crimes. Pereira v. United States, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954); United States v. Rabinowich, 238 U.S. 78, 35 S.Ct. 682, 59 L.Ed. 1211 (1915). The conspiracy count and substantive counts will require different proof. Nor does the joinder of conspiracy and substantive allegations subject defendants to double jeopardy in violation of the Fifth Amendment. Such offenses are factually and legally distinguishable.

The motions to dismiss based on alleged multiplicity and duplicity are denied.

(4) *Motions to dismiss based on alleged insufficiency of counts:*

■ It is urged that count one fails to state facts sufficient to constitute an offense. The allegations of count one, however, meet all the elements in a conspiracy offense: (1) it alleges an agreement, (2) to commit an offense against or defraud the United States, and (3) alleges numerous overt acts in

furtherance of the conspiracy. See United States v. Offutt, 75 U.S.App.D.C. 344, 127 F.2d 336, 338 (1942). The fact that these overt acts may not of themselves constitute criminal conduct as asserted by defendant Strachan is immaterial since such acts need not be crimes. The requirement is that they have been done in furtherance of the conspiracy and its objects. See Yates v. United States, 354 U.S. 298, 334, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957).

■ Count two is attacked as (1) failing to allege facts sufficient to state an offense, (2) failing to apprise defendants of the charge against them, and (3) resting on an unconstitutionally vague statute. The indictment overcomes the first two of these objections in that it tracks the language of the statute allegedly violated, 18 U.S.C. § 1503, and provides sufficient details, including dates and actions, to apprise the defendants of the charges against them. The statute itself, by incorporating the word "corruptly," does not thereby suffer from unconstitutional vagueness. See Anderson v. United States, 215 F.2d 84 (6th Cir.) cert. denied sub nom., Lewis v. United States, 348 U.S. 888, 75 S.Ct. 208, 99 L.Ed. 698 (1954).

■ The sufficiency of counts that allege violations of 18 U.S.C. § 1621 and § 1623 is also attacked by defendants. Each of these counts alleges all essential elements of the offenses charged: (1) that the defendant had duly taken an oath to testify truthfully, (2) that the defendant was testifying before a duly empanelled grand jury of the United States investigating possible violations of federal law or before a duly authorized Committee of the Senate conducting official hearings, (3) that the defendant knowingly made false declarations to the grand jury and stated matters which he did not believe to be true before the Senate Committee, and (4) that the defendant's false declarations and statements were material to the grand jury's investigation and to the Senate Committee's hearings. In addi-

tion, each count sets forth the exact testimony alleged to be false and the context in which it was given.

The motions to dismiss based on the alleged insufficiency of the counts are denied.

(5) *Motions to dismiss for alleged undue influence upon and/or selective presentation of evidence to the grand jury:*

■ Defendants urge in several motions and in a supplemental memorandum filed on June 19, 1974, by defendant Mardian, that the presentation of summarized grand jury testimony to the grand jurors requires either dismissal or comparison of the summaries to related grand jury transcripts to assess their accuracy. The Special Prosecutor has stated that such summaries were prepared but that they were never made available in written form to the grand jury. As defendant Mardian points out, it is unclear whether any summaries were read to the jurors. It is clear nonetheless, that the grand jurors had available to them at all times the actual transcripts of testimony given during the nearly two years of their investigation. Additionally, there is nothing to indicate that summaries were prepared with any intent of influencing the grand jury. In these circumstances, even assuming that the jurors heard a summary or summaries, the Court finds no basis for challenging an indictment valid on its face. See Lawn v. United States, 355 U.S. 339, 348–50, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958) and Costello v. United States, 350 U.S. 359, 363–64, 76 S.Ct. 406, 100 L.Ed. 397 (1956).

The further suggestion of defendants that the indictment ought to be dismissed because at least certain of the allegations "do not appear to be supported by the public testimony . . ." (Defendant Haldeman's Motion to Dismiss, p. 16), is wholly without merit.

The motions to dismiss for alleged undue influence upon and/or selective

presentation of evidence to the grand jury are denied.

(6) *Motion of Defendant Mitchell to dismiss Counts Four, Five and Six:*

Counts four and five of the indictment charge defendant Mitchell with false declarations to a grand jury in violation of 18 U.S.C. § 1623. The charges stem from the defendant's appearances of September 14, 1972 and April 20, 1973. Count six charges defendant Mitchell with perjury before the Senate Select Committee on Presidential Campaign Activities during his testimony of July 10 and July 11, 1973 in violation of 18 U.S.C. § 1621.

▮ Defendant Mitchell appeared before the grand jury in 1972 simply as a witness. Before his April 20, 1973 appearance, however, Mr. Mitchell was advised that he had become a target of the grand jury's investigation. On neither occasion did the defendant invoke his Fifth Amendment privilege, and when he objected to further appearances, the Special Prosecutor honored the objection. The Court perceives no violation of the defendant's constitutional rights arising out of these grand jury appearances.

▮ Defendant Mitchell presses his argument more strenuously insofar as it relates to his Senate Committee testimony. He asserts that the Senate Committee's failure to withdraw its subpoena after an official request operated to violate principles of due process and fundamental fairness, particularly the right to stand mute and put the government to its burden of proving *prima facie* the charges against him, and the right to maintain his defense intact and unrevealed until the government sustains its burden. The fact remains, nevertheless, that no matter how difficult the choice, the defendant was not coerced into relinquishing his Fifth Amendment privilege. At any point in his testimony, defendant Mitchell could have exercised that privilege if he had so chosen. The fact that as a by-product of Mr. Mitchell's public testimony the government may have been introduced to his trial defense is without legal significance.

Defendant's allegations regarding coercion are inaccurate and his other allegations likewise do not require dismissal of the indictment. *Cf.* Gelbard v. United States, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972). The motion to dismiss counts four, five and six is denied.

(7) *Motions of Defendants Mitchell and Ehrlichman to dismiss Counts Three and Ten:*

Defendants Mitchell and Ehrlichman are each charged with making false statements to Federal Bureau of Investigation agents in violation of 18 U.S.C. § 1001.

▮ Defendants contend that although § 1001 of Title 18 would by its literal terms encompass the activity charged, the legislative history and judicial gloss on the statute make it applicable only to false statements initiated by persons affirmatively seeking to obtain some benefit from the government. Defendants place particular reliance on Friedman v. United States, 374 F.2d 363 (8th Cir. 1967) and United States v. Lambert, 470 F.2d 354 (5th Cir. 1972) which remove all statements made to FBI agents, whether affirmative statements or exculpatory responses, from the purview of § 1001.

In the Court's view, the defendants' interpretation of § 1001 is unduly restricted and contrary to Supreme Court holdings and what appears to be the majority rule in application of the statute. In United States v. Gilliland, 312 U.S. 86, 61 S.Ct. 518, 85 L.Ed. 598 (1941), the Supreme Court traced the history of § 1001 and rejected the argument made here that the statute as amended refers only to a "false bill" situation, that is, false representations made in the process of obtaining government benefits. The offense there concerned an attempt to avoid a regulatory scheme, and the Court held, "The amendment indicated the congressional

intent to protect the authorized functions of governmental agencies from the perversion which might result from the deceptive practices described. We see no reason why this apparent intention should be frustrated by construction." 312 U.S. at 93, 61 S.Ct. at 522. See also, United States v. Beacon Brass Co., 344 U.S. 43, 73 S.Ct. 77, 97 L.Ed. 61 (1952); Bryson v. United States, 396 U.S. 64, 90 S.Ct. 355, 24 L.Ed.2d 264 (1969), and United States v. Knox, 396 U.S. 77, 90 S.Ct. 363, 24 L.Ed.2d 275 (1969).

The Friedman case, *supra,* cited by defendants is apparently the law in the Eighth Circuit, but the *Lambert* case, *supra,* in the Fifth Circuit, as the Court is informed by the Special Prosecutor, is awaiting a rehearing *en banc* pursuant to the court's own motion. In the Court's opinion, given the consistently broad interpretations of § 1001 by the Supreme Court, the better reasoned position is that of the Second Circuit as expressed in United States v. Adler, 380 F.2d 917 (2nd Cir.), cert. denied 389 U.S. 1006, 88 S.Ct. 561, 19 L.Ed.2d 602 (1967), where statements to FBI agents were expressly held to be covered by the statute. Consistent with and supportive of this interpretation are Bryson v. United States, *supra,* 396 U.S. 64, 90 S.Ct. 355, 24 L.Ed.2d 264 (1969); United States v. Knox, *supra,* 396 U.S. 77, 90 S.Ct. 363, 24 L.Ed.2d 275 (1969); United States v. Parten, 462 F.2d 430 (5th Cir. 1972); United States v. Isaac, 493 F.2d 1124 (7th Cir. 1974) and United States v. Van Valkenburg, 157 F.Supp. 599, 17 Alaska 450 (D.Alaska 1958). Furthermore, sound policy considerations favoring responsible criminal investigations and prosecutions militate against narrowing the section's applicability to exclude the FBI. "Our legal system provides methods for challenging the Government's right to ask questions —lying is not one of them. A citizen may decline to answer the question, or answer it honestly, but he cannot with impunity knowingly and willfully answer with a falsehood." Bryson v. United States, *supra,* 396 U.S. at 72, 90 S.Ct. at 360.

The motions to dismiss counts three and ten are denied.

(8) *Motion of Defendant Haldeman to dismiss for alleged failure to comply with the "Gaither rule":*

Defendant Haldeman argues that the government has not shown compliance with the rule enunciated by the Court of Appeals in Gaither v. United States, 134 U.S.App.D.C. 154, 413 F.2d 1061 (1969). It follows, he contends, that the indictment should be dismissed or that a hearing should be set to determine compliance with *Gaither.*

The Court of Appeals in *Gaither* ruled that at least twelve grand jurors had to pass upon and agree to the actual terms of an indictment, and that where this was not done, as in the prior practice within the District of Columbia where only the foreman reviewed the actual indictment, the indictment would be dismissed. The court made its ruling prospective, and initially devised a hearing procedure for the approximately 1,100 cases pending at the time of the decision whereby indicted defendants "similarly situated" to defendant Gaither could determine whether there existed a fatal variance between the indictment seen only by the foreman and the evidence presented to the grand jury as a whole. Gaither v. United States, *supra,* 413 F.2d at 1081–1084. This program, however, was later abandoned, and the rule was made strictly prospective. *Id.* Thus, the *"Gaither* hearing," intended to be a temporary measure, was abolished almost before it began.

Here, as may be determined from the affidavit of Assistant Special Prosecutor Richard Ben-Veniste filed June 5, 1974, the grand jury complied with *Gaither.* There is no basis for a hearing or dismissal.

Counsel for defendant Haldeman has moved by letter dated June 20, 1974 to examine Mr. Ben-Veniste on the stand pursuant to what he misconstrued as the

Court's suggestion. Having stated that no hearing is necessary or appropriate, the Court denies the motion.

 The motion to dismiss for alleged failure to comply with the *"Gaither* rule" is denied.

(9) *Motion of defendant Ehrlichman to dismiss for alleged noncompliance with 28 U.S.C. § 1861 et seq.:*

Defendant Ehrlichman moves to dismiss the indictment on the ground that the grand jurors who returned the instant indictment were not selected in accordance with law. Defendant Ehrlichman's central complaint is that the juror wheel is composed exclusively from the voter registration list maintained in the District of Columbia. He argues that the voter registration list may not be properly representative of the community as regards categories of race, economic status or age.

 Defendant's motion is defective on two counts. In the first instance, it is not accompanied by "a sworn statement of facts which, if true, would constitute a substantial failure to comply with the provisions of this title . . . ." See 28 U.S.C. § 1867(d, e). Secondly, the defendant has failed to demonstrate that the unsupplemented use of voter registration lists produces non-representative jury panels. The Jury Commission's questionnaires would indicate any variance between the registration list and the District of Columbia populace and are available to the defendant. See 28 U.S.C. § 1868. Nevertheless, he has not made a showing that unsupplemented voter registration lists are non-representative. Necessary supplementation of such lists is the exception, and absent a showing of deficiency, an indictment should not be dismissed where the approved jury selection process was followed. See United States v. King, 492 F.2d 895 (8th Cir. 1974); United States v. Dellinger, 472 F.2d 340 (7th Cir. 1972), cert. denied 410 U.S. 970, 93 S.Ct. 1443, 35 L.Ed.2d 706 (1973); United States v. Bennett, 445 F.2d 638 (9th Cir. 1971), cert. denied

404 U.S. 1023, 92 S.Ct. 700, 30 L.Ed.2d 673 (1972); Report on Jury Selection, 58 F.R.D. 501, 505–06 (1973).

The motion to dismiss for alleged noncompliance with 28 U.S.C. § 1861 et seq. is denied.

(10) *Motions of defendants Ehrlichman and Strachan to dismiss counts based on 18 U.S.C. § 1623:*

 Defendants Ehrlichman and Strachan assert that 18 U.S.C. § 1623 is unconstitutional since (1) to avail himself of the statute's recantation provision, a defendant would necessarily incriminate himself under 18 U.S.C. § 1621 (perjury statute), and (2) the section eliminates the "two witness rule" traditional for perjury trials. As noted by Judge Gesell in United States v. Ehrlichman, et al., CR 74–116 (D.D.C.) in his May 21, 1974 Memorandum regarding the first point, § 1623 does not force a defendant to make incriminating statements.

> Assuming for the moment that defendant violated § 1623(a), he was not required to recant nor was his penalty increased by failing to do so. He had already committed the complete offense by making the alleged false statement. Thereafter, he freely elected not to perform the acts which —under his interpretation of the statute—would have gained him immunity under § 1623 at the cost of an increased likelihood of conviction under § 1621. The recantation provision is not unconstitutional simply because it grants less than total use immunity.
>
> \* \* \* \* \* \*
>
> If recantation is as limited a defense as Ehrlichman suggests, it can hardly be said to render the entire statute illegal, since Congress could surely have passed § 1623 without any recantation provision at all.

United States v. Ehrlichman, et al., CR 74–116 (D.D.C.) Memorandum, May 21, 1974, pp. 6, 7.

 As to the abolition of the "two witness rule," the Supreme Court has

consistently made plain that this was a traditional common law rule of evidence, not of constitutional dimension which could be "changed . . . by the legislative power." United States v. Wood, 14 Pet. 430, 439, 10 L.Ed. 527 (1840). See also Weiler v. United States, 323 U.S. 606, 65 S.Ct. 548, 89 L.Ed. 495 (1945), and Hammer v. United States, 271 U.S. 620, 46 S.Ct. 603, 70 L.Ed. 1118 (1926).

The motions to dismiss charges based on 18 U.S.C. § 1623 are denied.

(11) *Motion of defendant Strachan to dismiss Count Thirteen:*

Defendant Strachan moves to dismiss count thirteen on the ground that (1) questions put to him before the grand jury were vague and misleading, (2) that they were so repetitive as to constitute "entrapment," (3) there was no wilfulness on his part, and (4) his responses were literally true. As concerns vagueness and the misleading nature of questions and "entrapment," the Court finds the argument without merit. The other allegations are at best premature before the government has presented its case in chief.

The motion to dismiss count thirteen is denied.

(12) *Motion of defendant Strachan to dismiss Counts One, Two, and Thirteen:*

 Defendant Strachan moves to dismiss counts one, two and thirteen because, as he contends, his constitutional rights were violated by the failure of the prosecutors to tell him at the time of his initial grand jury appearance that he was a target of the investigation and entitled to exercise certain constitutional rights if he so chose. The affidavit of Earl J. Silbert, then the Assistant United States Attorney in charge of the investigation, amply rebuts the defendant's largely unsupported conclusion that he was a target of the investigation on April 11, 1973. The failure to give a warning regarding his constitutional

rights to the defendant, thus, did not deprive him of those or any other rights.

The motion to dismiss counts one, two and thirteen is denied.

(13) *Motion of defendant Strachan to dismiss for possible failure of the government to produce exculpatory material in the future:*

 Defendant Strachan moves to dismiss the indictment on the ground that his rights to due process and a fair trial will be violated by failure of the government to make available to him various allegedly exculpatory materials. The motion is both premature and speculative, and is therefore denied.

(14) *Motion of defendant Strachan to dismiss Count Thirteen on the ground that prosecution is barred by recantation:*

 Defendant Strachan moves to dismiss count thirteen, which charges him with making material false declarations during his April 11, 1973 grand jury testimony, in violation of 18 U.S.C. § 1623, on the ground that prosecution is barred by the statute's recantation provision. The facts surrounding this controversy are not sufficiently in dispute so as to require an evidentiary hearing.

The record indicates that on April 11, 1973, defendant Strachan testified that in late November or early December, 1972, he made a single delivery of $350,-000 to Frederick LaRue on his own initiative. In his affidavit, defendant Strachan notes that on April 12, 1973, he telephoned Earl J. Silbert, then Principal Assistant United States Attorney, and offered to elaborate on his grand jury testimony of the previous day. The record further indicates, however, that the only modification defendant wished to make related to the amount of money delivered to Mr. LaRue: $328,000 instead of $350,000. When he visited the prosecutors on April 16, 1973, defendant Strachan offered no further modification to his April 11th testimony. Defendant Strachan was informed on April

16th that based on the testimony of others received since his grand jury appearance, he had become a target of the investigation and should retain counsel before proceeding further. On April 18, 1973, defendant Strachan, with counsel, met with the prosecutors and spoke in detail concerning the testimony cited in count thirteen.

The Court assumes for purposes of this motion, that the defendant's discussion with the prosecutors on April 18th constituted recantation before the grand jury within the meaning of § 1623. However, § 1623 does not provide that a defendant's admission of the falsity of his declarations automatically bars prosecution, but only that prosecution is barred if the admission occurs at a time. when the false declarations have "not substantially affected the proceeding, or it has not become manifest that such falsity has been or will be exposed." It is clear from the record that the second condition has not been met here. From the affidavit of Earl J. Silbert, it appears that by April 18th Jeb Magruder, John Dean and Frederick LaRue had divulged information sufficient to belie defendant Strachan's account of the transfer of money to LaRue. Thus, it had become manifest that the falsity of whatever was later recanted would be exposed. The failure to satisfy this condition of the recantation provision makes it inapplicable. See United States v. Kahn, 472 F.2d 272, 283 (2nd Cir.), cert. denied 411 U.S. 982, 93 S.Ct. 2270, 36 L.Ed.2d 958 (1973). Finally, it does not appear that defendant Strachan was prohibited from making a recantation prior to April 18, 1973. He specifically did not avail himself of the opportunity that presented itself on April 16th.

The motion to dismiss count thirteen on the ground that prosecution is barred by recantation is denied.

## II. MOTIONS FOR SEVERANCE

All of the original defendants in this case filed motions for severance. The defendants' exhaustive memoranda of points and authorities in support of the motions and the government's comprehensive memorandum in opposition thereto fully explored a multitude of possible justifications for severance. Upon consideration of all the memoranda submitted by the parties, and upon consideration of the arguments regarding these motions presented at the hearing held on June 11, 12 and 13, it is the opinion of this Court that the defendants' motions for severance should be, and hereby are, denied.

While all the arguments for and against severance have been considered and are covered by the above order, four fundamental reasons for denying the motions will be mentioned at this time. First, it is a general rule in federal courts that defendants jointly indicted should be tried together. United States v. Hines, 147 U.S.App.D.C. 249, 455 F.2d 1317, 1334, cert. denied 406 U.S. 975, 92 S.Ct. 2427, 33 L.Ed.2d 675 (1972); Brown v. United States, 126 U.S.App.D.C. 134, 375 F.2d 310, 315, cert. denied 388 U.S. 915, 87 S.Ct. 2133, 18 L.Ed.2d 1359 (1967); Dykes v. United States, 114 U.S.App.D.C. 189, 313 F.2d 580, 581 (1962); Hall v. United States, 83 U.S.App.D.C. 166, 168 F.2d 161, 163, cert. denied 334 U.S. 853, 68 S.Ct. 1509, 92 L.Ed. 1775 (1948). This is particularly true in conspiracy cases where the charges result from the same or similar acts and may be proved against all the defendants by the same evidence. See United States v. Edwards, 488 F.2d 1154, 1160 (5th Cir. 1974); United States v. Perez, 489 F.2d 51, 65 (5th Cir. 1973). *See also* United States v. Shuford, 454 F.2d 772, 775, 776 (4th Cir. 1971); United States v. Barber, 442 F.2d 517, 529 (3rd Cir. 1971) cert. denied 404 U.S. 958, 92 S. Ct. 327, 30 L.Ed.2d 275 (1972). In such circumstances only a compelling showing of possible prejudice will justify severance. *See generally* United States v. Hines, *supra* at 1334; United States v. Blue, 440 F.2d 300, 302 (7th Cir.) cert. denied 404 U.S. 836, 92 S.Ct. 123, 30 L.Ed.2d 68 (1971); United

States v. Enten, 332 F.Supp. 249, 251 (D.D.C.1971). Thus, this Court initially notes that the interests of fairness to the witnesses, to the jury, to the government, to the judicial system, and ultimately to the defendants themselves outweigh many of the arguments for severance.

Secondly, no defendant has made a persuasive showing that severance would significantly enhance the likelihood that a possibly reluctant co-defendant would be willing to testify as a witness for him. *See generally* United States v. Martinez, 486 F.2d 15, 22, 23 (5th Cir. 1973); Byrd v. Wainwright, 428 F.2d 1017, 1020 (5th Cir. 1970); United States v. Shuford, *supra* at 778, 779; United States v. Dioguardi, 332 F.Supp. 7, 13 (S.D.N.Y.1971). As a practical matter, there has not been any indication that any particular defendant whose testimony is desired by a co-defendant will not, in fact, testify during the course of the joint trial. In fact, the representations of counsel for certain of the defendants indicate that at least some of the defendants intend to take the stand. Furthermore, the defendants have failed to indicate the *exculpatory importance* of the *particular* testimony they desire to elicit from their co-defendants.* See United States v. Shuford, *supra* at 778, 779; Byrd v. Wainwright, *supra* at 1021, 1022; United States v. Echeles, 352 F. 2d 892, 898 (7th Cir. 1965).

■ Thirdly, the types of antagonistic defenses which would necessitate severance are lacking in this case. It appears that the separate defenses of the individual defendants will not be entirely overlapping, but the fact that the defendants will be presenting independent defenses is not grounds for severance. *See* United States v. Wilson, 140 U.S.App.D.C. 220, 434 F.2d 494, 500–502 (1970); United States v. Robinson, 139 U.S.App.D.C. 286, 432 F.2d 1348, 1351 (1970); Rhone v. United States, 125 U.S.App.D.C. 47, 365 F.2d 980, 981 (1966); Allen v. United States, 91 U.S. App.D.C. 197, 202 F.2d 329, 334, cert. denied 344 U.S. 869, 73 S.Ct. 112, 97 L.Ed. 674 (1952). While the defendants have speculated that conflicting defenses may be presented, it does not appear that mutually exclusive defenses will be presented, nor that the conflicts that may arise will be irreconcilable or fatally prejudicial. *See* United States v. Barber, *supra* at 530; Allen v. United States, *supra* at 334. Certainly severance is not mandated in this situation. And, of course, in the absence of a "head-on conflict between two defendants", the related *De Luna* rationale for severance does not apply. De Luna v. United States, 308 F.2d 140 (5th Cir. 1962). The *De Luna* rule is that when counsel for one defendant would have a duty to comment on the failure of a co-defendant to take the stand because of a head-on conflict between the defendants, then severance should be granted. *Id.* United States v. Hines, *supra* at 1334, 1335; United States v. Enten, *supra* at 250, 251.

■■ Finally it is not insignificant that the Supreme Court in Schaffer v. United States, 362 U.S. 511, 516, 80 S. Ct. 945, 948, 4 L.Ed.2d 921 (1960) noted that: "[T]he trial judge has a continuing duty at all stages of the trial to grant a severance if prejudice does appear." *See also* United States v. Wilson, 434 F.2d at 499, 500; Sims v. United States, 132 U.S.App.D.C. 111, 405 F.2d 1381, 1382 (1968). Thus, if good cause for severance should arise at any time during the trial, this Court would be able to order the proper relief. But, for the present, this Court is convinced that the defendants have not shown any valid cause for severance.

---

* While defendant Parkinson did sufficiently particularize the testimony he desires co-defendant Mitchell to give, an adequate showing of the exculpatory importance of this testimony was not made.

### III. MOTIONS RELATING TO PUBLICITY

All of the defendants filed one or more motions for severance and/or continuance and/or change of venue and/or dismissal because of the massive amount of pre-trial publicity relating to this case. Upon full consideration of the voluminous memoranda of points and authorities filed by the parties; and upon consideration of the arguments presented by counsel for the parties during the hearings held June 11, 12 and 13, it is the opinion of this Court that the above-mentioned motions should be and hereby are, denied.

 Again, while many arguments regarding pre-trial publicity were debated by the parties, only the major points will be mentioned here. Reference may be made to the government's memorandum in response to defendants' motions concerning pre-trial publicity for all points not covered herein. *See also* United States v. Mitchell & Stans, 372 F.Supp. 1239 (S.D.N.Y.1973); United States v. Chapin, Crim. No. 990–73 (D. D.C. January 31, 1974); United States v. Ehrlichman, 376 F.Supp. 29 (D.D.C. 1974). First, there is no support for the defendants' arguments that the unprecedented pre-trial publicity warrants dismissal. The well-known case of Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966), which was repeatedly cited in the memoranda, involved a situation quite different from that which will present itself in this case, for it was much more than just massive publicity that prejudiced that trial. In its reversal of Sheppard's conviction, the Supreme Court emphasized that: "[B]edlam reigned at the courthouse during the trial and newsmen took over practically the entire courtroom, hounding most of the participants in the trial . . . ." *Id.* at 355, 86 S.Ct. at 1518. Not only did reporters continually disrupt the proceedings, and generally contribute to an atmosphere more befitting a carnival than a courtroom trial, but the prosecution was directly involved in disseminating highly prejudicial information through the mass media; the jury was deprived of private and calm environs in which to deliberate and consider the evidence; and the influence of highly inflammatory news stories directly reached some of the jurors during the course of the trial. In short, much of the prejudice in the *Sheppard* case resulted from the failure of the trial judge to protect the integrity of the judicial process or to control the trial setting. Such has not been, nor will it be, the situation in this case. Parenthetically, it is also worth noting that the Supreme Court did not include dismissal among the steps it suggested might be taken when massive publicity and other factors prejudiced the right of a defendant like Sheppard to obtain a fair trial.

In the second place, the Court rejects the argument that the government, through the Senate Select Committee, is responsible for having generated highly inflammatory publicity so that, on the basis of Delaney v. United States, 199 F.2d 107 (1st Cir. 1952), dismissal must be granted. Since none of the defendants were under indictment for these charges at the time they testified before the Senate Committee, the *Delaney* case is inapposite and the arguments based upon it must fall.

 Thirdly, on the basis of the information the defendants have presented, it is apparent that change of venue and severance would be ineffective remedies in this case. It is likely that the trial of any defendant associated with the so-called "Watergate affair" would be a *cause celebre* in any city. It is also probable that transferring this case to another city would intensify, rather than alleviate, the problems of potential prejudice resulting from localized publicity. Nevertheless, the transfer motions might be renewed should it appear at the *voir dire* that an impartial jury cannot be found in this district.

 Finally, in denying the defendants' motions for continuance this Court

adheres to the rule of this Circuit that motions for continuance and the like should not be granted before the *voir dire* examination is held. As the Court of Appeals held in Jones v. Gasch, 131 U.S.App.D.C. 254, 404 F.2d 1231 (1967):

> " 'The ultimate question' on such a motion 'is whether it is possible to select a fair and impartial jury, and the proper occasion for such a determination is upon the *voir dire* examination.' [Blumenfield v. United States, 284 F.2d 46, 51 (8th Cir. 1960) *cert. denied* 365 U.S. 812, 81 S. Ct. 693, 5 L.Ed.2d 692 (1961).] It is then, and more usually only then, that a fully adequate appraisal of the claim can be made, and it is then that it may be found that, despite earlier prognostications, removal of the trial is unnecessary. . . . Frequently the problem anticipated works itself out as responses by prospective jurors evaporate apprehensions. *Id.* at 1238, 1239.

The defendants might upon the *voir dire* examination, wish to renew their motions for continuance, and the Court would then review the propriety of granting that remedy. But to grant any such motion now would require a flight of speculation inappropriate for any court to take.

The Court is mindful as well of the Resolution of the Judicial Conference of the United States in October, 1971, later adopted by this Court which states, *inter alia,* with regard to "protracted, difficult, or highly publicized cases," that

> Immediately upon notification of the assignment to try a case the district judge shall take all proper and required steps to assure the prompt disposition of the case. Pre-trial conferences should be scheduled with trial counsel, stated periods established for filing and disposition of motions, discovery procedures scheduled, and *early trial date fixed and maintained.* The district court shall maintain constant supervision over all phases of the case, by frequent record conferences with counsel.

Reports of the Proceedings of the Judicial Conference of the United States held at Washington, D. C., March 15–16, 1971 and October 28–29, 1971, p. 72 (emphasis added).

█ Defendants John Ehrlichman and Robert Mardian also moved to dismiss the indictments because of alleged prejudicial *pre-indictment* publicity and improper disclosures by the Special Prosecutor's office.** The dismissal of an indictment because of pre-indictment publicity would be unprecedented, and in this case would certainly be unwarranted. The Court is persuaded that the defendants have not made a sufficient showing that publicity might have prejudiced the grand jury or that the Special Prosecutor's office has been guilty of any significant misconduct. The motions to dismiss on these grounds are denied. The written and oral requests for an evidentiary hearing have also been fully considered and are, for the same reason, denied.

## IV. & V. MOTIONS FOR BILLS OF PARTICULARS AND DISCOVERY MOTIONS

Rulings on motions for Bills of Particulars and discovery motions are withheld at this time to facilitate an amicable resolution of the issues between the parties. See Appendix A.

---

** On June 27, 1974, defendant H. R. Haldeman filed a supplemental motion to dismiss and for an evidentiary hearing on the grounds of pre-indictment publicity. The arguments raised are, in all significant respects, the same as those raised by defendants Ehrlichman and Mardian, and Mr. Haldeman's supplemental motion is accorded the same treatment and disposition as the Ehrlichman and Mardian motions.

## APPENDIX A

WATERGATE SPECIAL PROSECUTION FORCE
United States Department of Justice
1425 K Street, N.W.
Washington, D. C. 20005

July 3, 1974

The Honorable John J. Sirica
Judge, United States District Court
United States Courthouse
Third Street and Constitution
 Avenue, N. W.
Washington, D. C. 20001

Re: United States v. Mitchell, et al.
 Criminal No. 74–110

Dear Judge Sirica:

This letter is to advise you that the Government and counsel for the defendants have tentatively agreed that there is no need for rulings on the defendants' motions for Bills of Particulars at this time. The ruling on these motions will be necessary only if at some point counsel for any of the defendants wants to press a particular request and we are unable to resolve the issue among ourselves.

With respect to the defendants' motions for discovery and inspection, the Government has already provided each defendant with copies of his own grand jury testimony, prosecution interviews, and FBI interviews taken in connection with the Watergate cover-up case, and is currently conducting a search of the files of the Special Prosecution Force, Department of Justice, and the FBI for any other statements or testimony of defendants that may relate to this case.

The Government is also endeavoring to obtain for each defendant statements and testimony relating to this case made by that defendant to congressional committees that are not public information. To date, it appears that such testimony and statements will be provided to the Government in the near future by all pertinent committees with the exception of the Armed Services Committee of the House of Representatives (in particular, testimony taken by Congressman Nedzi's Subcommittee).

The Government has also agreed to make available to the defense as soon as practicable:

(1) Copies of Presidential tape recordings of September 15, 1972; February 28, 1973; March 13, 1973; March 21, 1973[2]; March 22, 1973; and April 16, 1973[2], subject to the Court's directions as to arrangements for access, and transcripts thereof.

(2) A list of scientific tests and experiments in the possession of the Special Prosecutor relating to this case.

(3) Appropriate affidavits relating to file searches by pertinent agencies regarding electronic surveillance of defendants, as

set out in the Government's Answer to Defendants' Motions for Discovery.

(4) Inspection of the press release file of the Special Prosecutor.

(5) Federal felony criminal records of potential Government witnesses.

(6) Stenographic notes or recordings of particular portions of grand jury testimony of defendants Haldeman and Strachan, pursuant to further discussions now underway concerning the specifics of portions sought.

In addition, of course, the Government has made a very broad offer of pre-trial discovery and inspection including all statements of potential witnesses, all *Brady* material, and inspection of all physical evidence the Government intends to offer at trial, subject to agreement by all defendants to reciprocal discovery of similar material. This offer is set out in the Government's Answer to Defendants' Motion for Discovery and Inspection.

With regard to other discovery requests by defendants going beyond the Government's discovery offer, the Government stands on its response as previously submitted in its Answer to Defendants' Motions for Discovery.

Very truly yours,

(s) James F. Neal

James F. Neal,

Associate Special Prosecutor

cc. All Defense Counsel