**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Eugene William CLAY, Defendant-Appellant (two cases).**

**Nos. 72–1964 and 72–2639.**

United States Court of Appeals, Ninth Circuit.

April 2, 1973.

James J. Brown (argued), Las Vegas, Nev., for defendant-appellant.

Alice A. Wright, Asst. U. S. Atty. (argued), William C. Smitherman, U. S. Atty., Patricia Whitehead, Asst. U. S. Atty., Phoenix, Ariz., for plaintiff-appellee.

Before BROWNING and CARTER, Circuit Judges, and JAMESON,* District Judge.

JAMES M. CARTER, Circuit Judge:

Clay was convicted by a jury and sentenced on two counts: (1) aiding and abetting the importation of 100 pounds of marijuana, in violation of 21 U.S.C. §§ 952(a) and 960(a)(1), and (2) possessing the marijuana with intent to distribute the same, in violation of 21 U.S.C. § 841(a)(1).

On appeal from the conviction in No. 72–1964, Clay raises three issues: (1) the sufficiency of the evidence on both counts; (2) whether the trial court erred in its instructions on reasonable doubt; and (3) whether the trial court erred in denying a motion for a bill of particulars. We affirm in Case No. 72–1964.

In No. 72–2639, Clay moved for a new trial on the basis of newly-discovered evidence and the trial court denied the motion. He appealed from the ruling. We affirm in Case No. 72–2639.

## I.

### The Sufficiency of the Evidence

■ The facts adduced at trial, largely from the testimony of government agents, amply support the convictions. Briefly summarized, the facts show that narcotics agents received information that a white 1964 Ford carrying marijuana would cross the border from Mexico into Gadsden, Arizona, on October 16, 1971. Such a vehicle was seen in the parking lot of a bar in Gadsden, and shortly thereafter Clay drove up, parking his 1967 Malibu near the Ford.

The Ford was driven by an unnamed Mexican, to whom Clay spoke. The Ford then departed Gadsden toward the south and the border. It was later seen returning north from the border, and trailed to Denny's Restaurant in Yuma. There, it parked next to Clay's 1967 Malibu. Clay was present as the Mexican loaded the Malibu with sacks that later turned out to be the marijuana in question.

Clay then crossed the parking lot, entered another car owned by him—a 1959 Ford Ranchero—and drove it to a Mobil truck stop. Clint Daniels, the co-defendant, was in a nearby cafe, and Clay was observed sitting with Daniels. Clay then departed in his Ranchero, and Daniels later left in Clay's 1967 Malibu. Daniels was followed and stopped by agents who seized the marijuana.

We are unable to say that the evidence was insufficient to support the convictions. Especially we note that Clay conversed with the Mexican two times within a few hours, met with Daniels who later was arrested with the contraband, and was present while the contraband was loaded into his own car.

## II.

### The Instruction on Reasonable Doubt

The complete instruction on reasonable doubt was as follows:

"The burden of proof in this case rests with the prosecution from beginning to end of trial to establish beyond a reasonable doubt every fact essential to the conviction of the defendant. The defendant has no burden to sustain. The defendant is not required to prove his innocence. It is enough that his evidence, if, when taken with the prosecution's, raises a reasonable doubt as to his guilt, and in that case he must be acquitted.

Now, a reasonable doubt means precisely what the term implies. It is a doubt based upon reason. It does not

---

* Honorable William J. Jameson. United States District Judge, for the District of Montana, sitting by designation.

mean every conceivable kind of doubt, it does not mean a doubt which is imaginery or fanciful or one that is capricious or speculative. It simply means an honest doubt that appeals to reason and is founded upon reason.

If in this case, after you have considered all the evidence, you have such a doubt in your mind as would cause you or any other prudent man or woman to hesitate in some matter of grave concern in your own lives, then you have such a doubt as the law contemplates by the term 'reasonable doubt.'

A defendant can not be convicted unless his guilt of the crime charged is established to a moral certainty and beyond a reasonable doubt, but the law does not require such a degree of proof as, excluding the possibility of error, produces absolute certainty, because such proof is rarely, if at all, possible. Moral certainty alone is required, that is that degree of proof which produces conviction in an unprejudiced mind.

Now, a reasonable doubt may arise not only from the evidence produced but also from a lack of evidence. Since the burden is upon the prosecution to prove the accused guilty beyond a reasonable doubt of every essential element of the crime charged, a defendant has the right to rely upon failure of the prosecution to establish such proof. A defendant may also rely upon evidence brought out on cross-examination of witnesses for the prosecution.

The law does not impose upon a defendant the duty of producing any evidence. You are to consider the strong probabilities of the case. A conviction is justified only when such probabilities exclude all reasonable doubt as I have defined that term for you. And whenever, after a careful consideration of all the evidence, your minds are in that state where a conclusion of innocence is indicated equally with a conclusion of guilty, or

*if there is a reasonable doubt as to whether the evidence is so balanced, the conclusion of innocence then must be adopted.*

And without it being restated or repeated, you are to understand that the requirement that a defendant's guilt be shown beyond a reasonable doubt is to be considered in connection with and as accompanying all the instructions that are given to you."

Clay contends that the italicized portion of the instruction above (1) interjected a preponderance concept, and (2) by inference it places on the defendant the burden to produce some evidence and therefore tended to confuse the jury on the Government's burden of proof.

Appellant relies in part on the following cases where somewhat similar language, in combination with other errors in instructions, was found to require reversal. United States v. Link (3 Cir. 1953) 202 F.2d 592, 594 (". . . if you find the evidence . . . equally balanced . . . you must acquit . . . ." ". . . [Y]ou put [the evidence] in the scales and you weigh it in your minds [and if you] believe that the evidence . . . is as equally consistent with . . . innocence . . . as it is with . . . guilt, you must acquit . . . ."); United States v. Hughes (2 Cir. 1968) 389 F.2d 535, 537, cert. den., 396 U.S. 867, 90 S. Ct. 145, 24 L.Ed.2d 120 (1969) (". . . if you find that the evidence . . . is as consistent with innocence as with guilt, or that it is more likely that the defendant is innocent than guilty, then you should acquit him."); United States v. Guglielmini (2 Cir. 1967), 384 F.2d 602, 606 (emphasis deleted) (". . . if you find a probability of innocence, reasonably, then you have a reasonable doubt.").

■ In our case the instruction on burden of proof beyond a reasonable doubt ran seven paragraphs. In six places therein the court referred to the Government's burden to prove the defendant guilty beyond a reasonable

doubt. In two places the court stated the defendant had no burden to sustain.

In· the next to last paragraph the court used the quoted language, "[If] your minds are in a state where a conclusion of innocence is indicated equally with a conclusion of guilty or if there is a reasonable doubt as to whether the evidence is so balanced, the conclusion of innocence then must be adopted." In the same paragraph immediately *before* the quoted language the court stated, "A conviction is justified only when such probabilities exclude all reasonable doubt . . ." and immediately *following* the quoted language, in the final paragraph the court again stated "the requirement that a defendant's guilt be shown beyond a reasonable doubt . . ." ·

We do not approve the questioned language or any reference to a balancing test in an instruction on burden of proof beyond a reasonable doubt. But considering the whole instruction there was no reversible error.

Attempts to enlarge upon the standard instruction on burden of proof and reasonable doubt can lead to error and are often more confusing than helpful. In Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1950), there was assigned as error a refusal to give an instruction that when the Government's evidence is circumstantial it must be such as to exclude every reasonable hypothesis other than that of guilt. The court stated ". . . that where the jury is properly instructed on the standards for reasonable doubt, such an additional instruction . . . is confusing and incorrect . . . ." *Id.* at 139–140, 75 S.Ct. at 137. *Accord*, United States v. Nelson (9 Cir. 1969), 419 F.2d 1237.

■ District Judges would be well advised to review their standard instruction on burden of proof and reasonable doubt and eliminate all references to "probabilities" or "balancing of evidence" as such language was used in *Link, Hughes* and *Guglielmini, supra.*

## III.

### *The Denial of the Motion for a Bill of Particulars*

■ Clay's motion for a bill of particulars requested information as to the day, time, and place of the commission of the offenses alleged in the indictment, and his role or participation therein. To deny or grant a bill and the extent thereof rests in the sound discretion of the trial court and its decision will not be disturbed absent an abuse of discretion. Wong Tai v. United States, 273 U.S. 77, 82, 47 S.Ct. 300, 71 L.Ed. 545 (1927); Cooper v. United States (9 Cir. 1960), 282 F.2d 527, 532.

■ Although the court denied the motion for the bill, it granted Clay full discovery. We find no abuse of discretion.

## IV.

### *The Motion for a New Trial*

■ A trial court has the power to deny a motion for new trial, without remand to it, while the case is on appeal. United States v. Hays (9 Cir. 1972), 454 F.2d 274; United States v. Frame (9 Cir. 1972), 454 F.2d 1136, cert. den., 406 U.S. 925, 92 S.Ct. 1794, 32 L.Ed.2d 126.

The motion was based on an affidavit of Daniels, who was a co-defendant and a fugitive at the time of trial.

Daniels, in his affidavit, attempted to clear Clay and take the entire blame for the offense. In part, the affidavit stated:

> "I saw Gene [Clay] at Denny's in Yuma and switched cars with him. I had previously made arrangements to pick up my marijuana there and Gene [Clay] arrived when we were making the switch."

■ The movant must show, among other things, that the new evidence is not merely cumulative, and would probably produce an acquittal. Pitts v. United States (9 Cir. 1959), 263 F.2d 808, 810, cert. den., 360 U.S. 919, 79 S.Ct. 1438, 3 L.Ed.2d 1535; Gallegos v. United States (9 Cir. 1961), 295 F.2d 879,

**1216**

881; United States v. Cousins (9 Cir. 1970), 429 F.2d 1271, 1272, cert. den., 400 U.S. 904, 91 S.Ct. 143, 27 L.Ed. 396, and United States v. Martinez (9 Cir. 1970), 436 F.2d 12, 15, cert. den., 401 U.S. 959, 91 S.Ct. 969, 28 L.Ed.2d 244 (1971).

■ The proposed evidence was cumulative and rather than probably producing an acquittal, it tended to further incriminate Clay.

■ Nor was the court required to hold an evidentiary hearing. Clay cites cases from other circuits holding that in certain circumstances an evidentiary hearing should be held. No Ninth Circuit cases are cited. Assuming the trial court, in its discretion, may hold an evidentiary hearing, we hold that the trial court here did not abuse that discretion.

Judgment is affirmed. Bail is revoked now.