**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Frank M. LONG, Steak N' Lobster, Inc.,**
**Reagan Joe Baker,**
**Defendants-Appellants.**

**Nos. 82–1423, 82–1424 and 82–1426.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 7, 1983.

Decided May 26, 1983.

Monte E. Hester and James Buckley, Tacoma, Wash., for plaintiff-appellee.

James R. Moore, Asst. U.S. Atty., Seattle, Wash., for defendants-appellants.

Before GOODWIN, ALARCON, and FERGUSON, Circuit Judges.

ALARCON, Circuit Judge.

Appellants Frank Long, Reagan Joe Baker, and Steak N' Lobster, Inc., appeal their convictions for conspiracy and theft in violation of 18 U.S.C. §§ 641, 642. Frank Long also appeals his conviction for making false declarations to a grand jury in violation of 18 U.S.C. § 1623. We affirm.

## I. PERTINENT FACTS

The charges in this case arose out of a scheme to steal raw meat from the Fort Lewis army base in Washington.

Andrew Pruitt was the Chief Supervisor at the Fort Lewis commissary meat department. In 1978, Pruitt, Patrick Weber, and Reagan Joe Baker formed a corporation to operate two restaurants in the state of

Washington known as Steak N' Lobster, Incorporated. Reagan Joe Baker was employed by the corporation to act as the manager of the Steak N' Lobster restaurant on Pine Street in Tacoma, Washington.

While acting as chief supervisor of the commissary meat department at Fort Lewis, Pruitt and Frank Long, another supervisor at Fort Lewis, diverted meat which had been ordered specifically for Fort Lewis to various locations including Pruitt's restaurant, Steak N' Lobster.

The meat was diverted in two ways. The first method involved an arrangement between Pruitt and two drivers from Randy's Meats (hereafter Randy's), the wholesale meat supplier to Fort Lewis. Randy's drivers would deliver meat to the Fort Lewis base. Commissary personnel would examine the meat. Thereafter, at Pruitt's or Long's direction, portions of the meat were returned to the truck, and the driver was instructed to deliver the meat to various locations, including the Steak N' Lobster restaurant.

Under the alternate scheme, Pruitt would instruct Randy's to set aside an order of meat for Fort Lewis in a "will-call" trailer to be picked up at a later date. Randy's personnel would mark the top boxes "Fort Lewis." The number on each box was entered on the invoices prepared for Fort Lewis. Weber, after representing to Randy's that he was acting on behalf of Pruitt, would pick up the meat and deliver it to the Steak N' Lobster restaurants.

In 1980, the FBI began an investigation into the theft of meat from Fort Lewis. Long was subpoenaed to appear before the grand jury. He testified that he had no knowledge of the thefts. The first grand jury failed to return an indictment. The government presented its case before a second grand jury and an indictment was returned.

Three months prior to trial, Pruitt was killed in a hunting accident. Before his death, Pruitt executed a written statement exculpating Weber and Baker of any wrongdoing.

At the pretrial hearing, Long made various motions. Each was denied. At trial the district court refused to admit Pruitt's exculpatory statement.

The jury found Long guilty of one count of conspiracy, six counts of theft and one count of perjury. Baker and Steak N' Lobster were found guilty of one count of conspiracy and six counts of theft.

## II. BAKER & STEAK N' LOBSTER'S CONTENTIONS ON APPEAL

### Government Interest in the Meat

Baker and Steak N' Lobster contend that the government failed to prove the meat was government property as required by 18 U.S.C. § 641.

Section 641 provides in relevant part: "whoever . . . steals, purloins, or knowingly converts to his use or the use of another . . . any thing of value (of $100.00 or more) of the United States or of any Department or agency thereof . . . shall be fined not more than $10,000.00 or imprisoned not more than ten years, or both; . . ."

Thus, under § 641 an essential element of the crime of stealing property belonging to the United States is that the government: (1) had an interest in the goods stolen, and (2) suffered a property loss. *United States v. Collins,* 464 F.2d 1163, 1165 (9th Cir.1972). Proof that the property belonged to the federal government is also essential to give the United States District Court jurisdiction over the alleged theft. *United States v. Howey,* 427 F.2d 1017, 1018 (9th Cir.1970). While it is true that this issue is being raised for the first time on appeal, we must address it because questions involving subject matter jurisdiction cannot be waived. *Libhart v. Santa Monica Dairy Co.,* 592 F.2d 1062, 1064 (9th Cir.1979).

We review this issue under the principle that "[t]he evidence and its inferences . . . must be viewed in a light most favorable to the government as prevailing party," *United States v. Ponticelli,* 622 F.2d 985, 987 (9th Cir.), *cert. denied,* 449 U.S. 1016, 101 S.Ct. 578, 66 L.Ed.2d 476 (1980). No issue

of fact was raised during the trial concerning existence of title, delivery or possession. Therefore, the facts were uncontested. Accordingly, we must view these uncontested facts in the light most favorable to the government in determining if the United States had a sufficient interest in the raw meat ordered for Fort Lewis to satisfy the requirements of section 641.

We are entitled to infer, in the absence of any evidence to the contrary, that the district court was satisfied that the government had title to the meat before any theft occurred.

This court has recognized that a " 'substantial federal interest' sufficient to satisfy the elements of section 641 is present when the government has 'title to, possession of or control over' the object in question." *United States v. Hughes*, 626 F.2d 619, 622 (9th Cir.1980); *United States v. Johnson*, 596 F.2d 842, 846 (9th Cir.1979).

Steak N' Lobster and Baker argue that the United States did not have title to the meat nor was it in its possession at the time the thefts occurred. It is their view that Randy's retained exclusive control over the meat until the thefts occurred. We are also told that the government never had a property or possessory interest because the meat never was delivered to Fort Lewis.

While it is true that the government did not have actual *possession* of the meat that was placed in Randy's "will-call" trailer prior to the theft, it is the opinion of this court that there is substantial evidence in this record to show sufficient title and control to meet the requirements of section 641.

The agreement between Randy's and Fort Lewis was a government contract which is controlled by federal law. *Clearfield Trust Co. v. United States*, 318 U.S. 363, 367, 63 S.Ct. 573, 575, 87 L.Ed. 838 (1943). Passage of title in this case is governed by 32 C.F.R. 7–103.6 which provides in pertinent part that: "Unless this contract specifically provides for earlier passage, title to supplies ... shall pass to the government upon formal acceptance, regardless of when or where the Government takes physical possession."

■ The regulation does not define "acceptance." Existing law, however, permits federal courts to examine the conduct of the parties in defining the terms of their contract. *Gresham and Co., Inc. v. United States*, 470 F.2d 542, 545, 200 Ct.Cl. 97 (1972); *Sam Macri and Sons, Inc. v. United States*, 313 F.2d 119, 124 (9th Cir.1963). In addition, when there is an ambiguity in federal law, we may use uniform state laws, such as the Uniform Commercial Code (UCC) to help clarify ambiguities. *E.g., Bituminous Casualty Corp. v. Lynn*, 503 F.2d 636, 640 (6th Cir.1974); *Security Life and Accident Ins. Co. v. United States*, 357 F.2d 145, 148 (5th Cir.1966). The Uniform Commercial Code provides us with adequate legal guidelines to resolve this issue. The record before us discloses that Richard Fisher, president of Randy's, testified that when Pruitt ordered meat for Fort Lewis, he requested that the meat be selected and then be set aside for pickup at a later date. As noted above, pursuant to Pruitt's instructions, Randy's employees marked the boxes of meat with the words "Fort Lewis" and numbered the containers to correspond with the number which appeared for that item on the invoice prepared for the government. The meat was then placed in Randy's "will-call" trailer for pickup by Fort Lewis personnel.

■ The first principle which bears on this case is that title to goods cannot pass under a contract of sale until specific goods have been identified as the objects to be sold pursuant to the terms of the agreement. *See* UCC § 2–401(1). Such identification occurs when certain goods are "marked or otherwise designated by the seller as goods to which the contract refers." UCC § 2–501(1)(b).

■ The past course of conduct followed by Randy's and Pruitt in the purchase and sale of meat was clearly sufficient to establish that the meat was identified as having been ordered pursuant to the contract with the United States under UCC § 2–501(1).

The Uniform Commercial Code is also instructive as to when title passes to identified goods. UCC § 2–401(2) provides that title passes at the time and place at which the seller completes his performance with reference to physical delivery of the goods.

The meat taken from the will-call trailer had been marked, identified and stored in a special place at Randy's to be picked up by Pruitt's agent. Randy's performance was complete prior to the time the meat was picked up by the thief. Thus, title passed to the government prior to the theft.

We are satisfied from our analysis of the law which applies to commercial transactions, and the conduct of the parties as reflected in this record, that the United States had a property interest in the meat sufficient to comply with the jurisdictional requirements of 18 U.S.C. § 641.

Long also argues that the district court was required to determine whether title to the meat passed to the government before submitting this issue to the jury. The Supreme Court, however, has recognized that "[e]very court in rendering a judgment, tacitly, if not expressly, determines its jurisdiction over the parties and the subject matter." *Stoll v. Gottlieb*, 305 U.S. 165, 171–172, 59 S.Ct. 134, 137, 83 L.Ed. 104 (1938). *Accord Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites' de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104 n. 9, 72 L.Ed.2d 492 (1982).

## II. THE GRAND JURY PROCEEDINGS

Appellants Steak N' Lobster and Reagan Joe Baker contend that the trial court erred in denying their motions to dismiss the indictment for improper grand jury proceedings. Frank Long also raises this issue.

█ In reviewing the validity of the grand jury proceedings, this court is limited to determining whether "the grand jury has been overreached or deceived in some significant way" by the prosecutor's "flagrant" conduct. *United States v. Samango*, 607 F.2d 877, 882 (9th Cir.1979). *Accord Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 408–09, 100 L.Ed. 397 (1956);

*United States v. Cederquist*, 641 F.2d 1347, 1353 (9th Cir.1981); and *United States v. Wright*, 667 F.2d 793, 796 (9th Cir.1982).

Appellants contend that the second grand jury proceedings were improper because they were based upon hearsay and summaries of the testimony given before the first grand jury proceedings. These summaries were presented by FBI agent O'Neill. O'Neill read the testimony of some of the witnesses from the first grand jury and summarized the testimony of others. Appellants contend that this procedure precluded the grand jurors from observing the demeanor of the witnesses and from evaluating their credibility. Thus, it is argued, the proceedings had a prejudicial effect.

█ An indictment may be based upon summaries if they are not misleading or incomplete. *United States v. Litton Systems, Inc.*, 573 F.2d 195, 201 (4th Cir.), *cert. denied*, 439 U.S. 828, 99 S.Ct. 101, 58 L.Ed.2d 121, reh. den. 439 U.S. 997, 99 S.Ct. 600, 58 L.Ed.2d 671 (1978); *United States v. USDC for Southern District of West Virginia*, 238 F.2d 713, 720 (4th Cir.1956), *cert. denied sub nom., Valley Bell Dairy Co. v. United States*, 352 U.S. 981, 77 S.Ct. 382, 1 L.Ed.2d 365 (1957); *United States v. Mitchell*, 397 F.Supp. 166, 172 (D.D.C.Cir.1974). We have reviewed the grand jury transcripts. The summaries were complete and accurately related the testimony of those witnesses. It is true that this evidence was hearsay. The use of hearsay testimony, however, will not invalidate an indictment even if direct testimony was available. *United States v. Samango*, 607 F.2d at 880 n. 6. The determinative factor is whether the grand jury has been misled into believing that it was hearing direct testimony rather than hearsay. *United States v. Chanen*, 549 F.2d 1306, 1311 (9th Cir.), *cert. denied*, 434 U.S. 825, 98 S.Ct. 72, 54 L.Ed.2d 83. *See also Costello v. United States*, 350 U.S. at 363, 76 S.Ct. at 408–09. In this case the grand jury was informed that O'Neill was reading testimony from the first grand jury proceedings. O'Neill adequately identified each witness whose testimony was summarized.

Long also contends that the United States Attorney informed the second grand jury that portions of the testimony before the first grand jury were perjured.

A review of the grand jury proceedings discloses that the United States Attorney simply presented to the grand jury counts XXII, XXIII for its vote; those counts alleged that Long and Shafer perjured themselves before the first grand jury. No misconduct can be said to have occurred merely by presentation of these counts for consideration by the grand jury.

Appellants Steak N' Lobster and Reagan Joe Baker further contend that the grand jury proceedings were improper because lengthy transcripts were left with the grand jury. This argument is without merit. The record reflects that the transcripts of Frank Long & Kenneth Shafer[1] were left with the grand jury only after those transcripts had been read to the jurors.

We are satisfied from our review of the transcript that the second grand jury was not deceived by the prosecutor's conduct.

Appellant Frank Long suggests that the grand jury proceedings were defective because he was not properly advised of his right to consult with his attorney prior to testifying to the grand jury. During the trial Long's attorney indicated to the trial court that his client had in fact been advised of his right to consult with his attorney.[2]

Long raises other issues concerning the validity of the grand jury proceedings which were not raised in the district court. This court need not review issues not raised in the court below. *Hormel v. Helvering,* 312 U.S. 552, 556, 61 S.Ct. 719, 721, 85 L.Ed.

1037 (1941). *See also U.S. v. Tercero,* 640 F.2d 190, 195 (9th Cir.1980), *cert. denied,* 449 U.S. 1084, 101 S.Ct. 871, 66 L.Ed.2d 809 (1981).

In any event, the issues Long now seeks to raise on appeal, that as a target witness he should have been given *Miranda* warnings; and that he should have been warned of possible perjury charges, are without merit. This court stated in *United States v. Kelly,* 540 F.2d 990, 992 (9th Cir. 1976) that target witnesses need not be given any warnings. *See also United States v. Wong,* 431 U.S. 174, 97 S.Ct. 1823, 52 L.Ed.2d 231 (1977).

In *United States v. Mandujano,* 425 U.S. 564 at 581, 582, 96 S.Ct. 1768, at 1779, 48 L.Ed.2d 212 the Court concluded that additional perjury warnings are not required "[s]ince respondent was already under oath to testify truthfully."

Finally, Long contends that any warnings he was given should have been out of the presence of the grand jurors. The government accurately points out that the Supreme Court rejected that same argument in *United States v. Washington,* 431 U.S. 181, 97 S.Ct. 1814, 52 L.Ed.2d 238 (1977).

## III. ANDREW PRUITT'S AFFIDAVIT.

Appellants contend that the district court erred in excluding Andrew Pruitt's affidavit. We disagree.

Prior to his death Andrew Pruitt drafted a statement exculpating Reagan Joe Baker and Patrick Weber from any wrongdoing concerning the thefts of meat from Fort Lewis. The affidavit did not in any way implicate Pruitt.[3]

---

**1.** Kenneth Shafer was also a supervisor at Fort Lewis, and was acquitted of all charges.

**2.** MR. HESTER: Well the way—let me refer to the record, your Honor, at page 4 he says, Mr. Moore says at Line 10, I indicated to you that if you wanted to call that attorney at any point you would be able to do that, also do you understand that, and my client responded, I understand that, but he is not in town, so I can't call him. So Mr. Moore graciously says if you would like to consult with your attorney at some point you can stop the questioning and

we can resume at some later time after you have had a chance to consult with your attorney. It is like he didn't just tell him he was out of town, and you could consult with him if you choose to do so.

THE COURT: Well what could have been any plainer than that?

**3.** Pruitt's affidavit stated:
Andrew D. Pruitt, being first duly sworn on oath, deposes and says:
That he makes this affidavit freely, and without being under duress or undue influence,

At trial Weber sought to introduce the affidavit into evidence; however, Baker did not. The trial judge found that the affidavit was not a statement against interest under Fed.R.Evid. 804(b)(5).[4]

 Since Baker did not seek to introduce the affidavit at trial he has waived the right to do so before this court. In any event, the contention lacks merit. The affidavit does not qualify as a statement against interest since it did not implicate Pruitt. Thus, the statement is not trustworthy.

## IV. TESTIMONY OF GUY SHIPLEY

Appellants Steak N' Lobster and Reagan Joe Baker contend that the trial court abused its discretion in admitting the testimony of Guy Shipley.

Shipley, a wholesale meat salesman, visited Reagan Joe Baker's Reagan Cove Restaurant in 1977, attempting to obtain a meat account with the restaurant. He was unsuccessful. Two years later he again failed in his attempt to acquire Steak N' Lobster as an account. At trial Shipley testified that while he was at the Reagan Cove Restaurant in 1977, he saw boxes of meat marked "Fort Lewis." Shipley's testimony was admitted pursuant to Fed.R. Evid. 404(b) which provides as follows:

> for the purpose of clarifying certain things which may arise out of proceedings now being conducted before a Grand Jury in Seattle, Washington.
> Your affidavit states emphatically that Patrick M. Weber and R. Joe Baker have had nothing to do, at any time, with any transaction, concerning your affiant, or anyone else to your affiant's knowledge, which involves taking meat or other food products, without full payment therefore, from the United States Commissary system, of from or through your affiant.
> The purpose of this affidavit is to set forth, in writing, your affiant's position that R. Joe Baker and Patrick M. Weber are, to the best of your affiant's knowledge, free of any guilt concerning any unlawful operations regarding the United States Commissary, or the taking of meats without full compensation having been paid therefor.
> DATED this 1st day of January, 1982.

**4.** Fed.R.Evid. 804(b)(5) states in part:

(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Steak N' Lobster and Reagan Joe Baker correctly argue that evidence of other crimes is inadmissible to prove disposition to commit a crime. In this case, however, the trial court specifically found that the evidence was admitted for the sole purpose of showing Baker's knowledge that the meat he received from Pruitt was "Fort Lewis" meat. Appellants further contend that although evidence of prior conduct is admissible for purposes other than to prove character, it may only be admitted to the extent that it is more probative than prejudicial. *United States v. Bailleaux*, 685 F.2d 1105, 1109–10 (9th Cir.1982). They argue that Shipley's testimony was weak and contradictory and that the unfair prejudicial effect of his testimony far outweighed any probative value. After Shipley testified, the judge *sua sponte* read into the record his specific findings so as to clarify the basis for his ruling.[5]

(5) Other exceptions. A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

**5.** The district court stated:

If the testimony of the witness Shipley, presented by the government in rebuttal, is to be considered under 404–B as to prior acts of conduct, I would find—and the reason I allowed it to go to the jury—that the prior acts are sufficiently similar and close in time to be relevant. The evidence of the prior act is clear and convincing and the probative value of the evidence outweighs any potential prej-

■ Absent an abuse of discretion, this court will not reverse a trial court's ruling on admissibility of evidence. *United States v. Bradshaw,* 690 F.2d 704, 708 (9th Cir.1982); *United States v. Mehrmanesh,* 689 F.2d 822, 830 (9th Cir.1982). We are satisfied that the trial court did not abuse its discretion in admitting the testimony of Guy Shipley.

■ Appellants also argue that the trial court failed to give a limiting instruction to the jury on the specific purpose for which Shipley's testimony was admitted. The record discloses appellants did not ask for such an instruction. The government correctly points out failure to give a limiting instruction when one is not sought does not require a reversal. *United States v. Bradshaw,* 690 F.2d at 709.

## FRANK LONG'S ISSUES

### 1. *Severance*

■ The indictment charged two counts of conspiracy. Long & Shafer were named in the first count, and Baker, Weber and Steak N' Lobster were named in the second count. Long contends that these two conspiracies were unrelated and, therefore, the trial court erred in refusing to grant his motion for severance. Long further contends this error severely handicapped his ability to present an effective defense.

At the pretrial hearing, Long made a motion for severance. At the time the motion was denied the court stated that it was "with leave to refile ... both before the start of trial and during any time of the trial, if it appears that your client cannot receive a fair trial. I will consider it at that time."

Long never renewed his motion for severance. By failing to renew his motion to sever, Long waived his right to raise this issue before us. It is a general rule that to preserve the point, the motion to sever must be renewed at the close of the evidence. *United States v. Gaines,* 563 F.2d 1352, 1356 (9th Cir.1977).

### 2. *Continuance*

■ Frank Long contends that the trial court erred in refusing to grant him a continuance. The decision to grant or deny a requested continuance is within the trial court's discretion and will not be disturbed on appeal absent clear abuse of that discretion. *United States v. Hoyos,* 573 F.2d 1111, 1114 (9th Cir.1978).

Long contends that his ability to present a defense was severely handicapped by the court's denial of his motion for continuance. Long argues that his attorney had only one month to prepare a complex case which involved a 23-count indictment.

■ Before we can reverse for an abuse of discretion in the denial of a continuance, the appellant must establish that the refusal resulted in prejudice to his defense. *See United States v. Hernandez,* 608 F.2d 741, 746 (9th Cir.1979). Long has failed to identify any additional evidence he would have been able to present in his defense had his motion been granted. Long has not shown that he was prejudiced by the trial court's denial of his motion to continue.

### 3. *Coconspirator's Statements*

■ Frank Long contends that the district court was required to have a pretrial evidentiary hearing to determine the admissibility of coconspirators' statements.

We disagree. This court has determined that the decision to grant a pretrial hearing is within the discretion of the trial court. *United States v. Zemek,* 634 F.2d 1159, 1169 (9th Cir.1980), *cert. denied sub nom., Janovich v. United States,* 452 U.S. 905, 101 S.Ct. 3031, 69 L.Ed.2d 406 (1981).

### 4. *Long's Motion for Mistrial*

■ On the second day of trial, the government's attorney brought to the court's attention that statements concerning the case had been made in the presence of one of the jurors. Long immediately moved for a mistrial. The trial judge permitted Long's attorney to question the par-

udice. I think I have to make that finding.

That is why I allowed it to go to the jury.

ties involved as well as the juror. The court also questioned the juror and determined that the juror did not hear anything that would prejudice the defense. Long has failed to establish that any error or harm occurred which would compel a reversal.

### 5. Testimony of Alene Achord

Long asserts that Alene Achord's testimony was irrelevant and highly prejudicial and should not have been admitted.

Alene Achord was an employee at the Fort Lewis commissary from 1972 to 1976 and then again in 1978 and testified to ongoing thefts of meat by Pruitt, and to the fact that Long witnessed at least one of those thefts. Long argues that because there was a discrepancy between the testimony of Achord as to the date of the incident and the date charged in the indictment, the testimony should not have been admitted. The Court found Achord's testimony admissible under Rule 404(b)[6] as evidence of a common scheme or plan. In addition, the evidence was received to show Long's knowledge of thefts from the commissary.

■ A trial judge has wide discretion in determining whether evidence is supported by proper foundation, whether it is relevant and whether its probative value substantially outweighs any danger of unfair prejudice. *United States v. Ford,* 632 F.2d 1354, 1377 (9th Cir.1980), *cert. denied sub nom., Armstrong v. United States,* 450 U.S. 934, 101 S.Ct. 1399, 67 L.Ed.2d 369 (1981) (citations omitted). The district court did not abuse its discretion in admitting the challenged testimony.

### 6. Bill of Particulars

Long contends that the district court erred in denying his motion for a bill of particulars.

■ A motion for a bill of particulars is appropriate where a defendant requires clarification in order to prepare a defense. *Will v. United States,* 389 U.S. 90, 99, 88 S.Ct. 269, 275–76, 19 L.Ed.2d 305 (1967); *United States v. Clay,* 476 F.2d 1211, 1215 (9th Cir.1973). It is designed to apprise the defendant of the specific charges being presented to minimize danger of surprise at trial, to aid in preparation and to protect against double jeopardy. *United States v. Davis,* 582 F.2d 947, 951 (5th Cir.1978), *cert. denied sub nom., Clayton v. United States,* 441 U.S. 962, 99 S.Ct. 2408, 60 L.Ed.2d 1067, *rehr. denied,* 442 U.S. 948, 99 S.Ct. 2897, 61 L.Ed.2d 320 (1979). Long alleges that the indictment lacked specificity. As a result, he argues that he was severely hampered in his preparation and ability to present an adequate defense.

■ In determining if a bill of particulars should be ordered in a specific case, a court should consider whether the defendant has been advised adequately of the charges through the indictment and all other disclosures made by the government. *United States v. Giese,* 597 F.2d 1170, 1180 (9th Cir.), *cert. denied,* 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979). Full discovery will obviate the need for a bill of particulars. *Id.; United States v. Clay,* 476 F.2d 1211, 1215 (9th Cir.1973). A review of the record in this case reveals that Long's counsel advised the district court that full discovery had been made.

COURT: Have you been supplied with all the information you have requested under the rules that you are entitled to at this time?

HESTER: I am satisfied, your Honor, that I have been supplied with sufficient information at this time. (RT: Vol. IV, 2, 3).

■ The decision whether to grant a request for a bill of particulars is directed to the trial court's discretion. *Will v. United States,* 389 U.S. 90, 99, 88 S.Ct. 269, 275–76, 19 L.Ed.2d 305 (1967); *Wong Tai v. United States,* 273 U.S. 77, 82, 47 S.Ct. 300, 302, 71 L.Ed. 545 (1927). Under the circumstances presented here, we find no such abuse.

**6.** The text of Rule 404(b) Fed.R.Evid. *see supra* at p. 12.

#### 7. *Legality of Long's Sentencing*

 Long was sentenced to concurrent four-year sentences for theft, a consecutive one-year sentence for perjury, a fine of $5,000, and five years' probation. Long contends that the district court abused its discretion in sentencing him because it did not "individualize"[7] his sentence, and because he was being punished for refusing to admit his guilt. *See United States v. Miller,* 589 F.2d 1117, 1138 (1st Cir.1978), *cert. denied,* 440 U.S. 958, 99 S.Ct. 1499, 59 L.Ed.2d 771 (1979).

There is ample support in the record to show that the district court based its sentence of Long upon the individual facts of his case. Moreover, this court has held that a district court may consider a defendant's unwillingness to admit guilt following conviction in imposing sentence. *United States v. Segal,* 549 F.2d 1293, 1299 n. 3 (9th Cir.), *cert. denied,* 431 U.S. 919, 97 S.Ct. 2187, 53 L.Ed.2d 231 (1977); *Gollaher v. United States,* 419 F.2d 520, 529 (9th Cir.), *cert. denied,* 396 U.S. 960, 90 S.Ct. 434, 24 L.Ed.2d 424 (1969).

#### 8. *Failure to Dismiss Count XII*

 Long asserts that the evidence was insufficient to convict him under count XII, the misdemeanor charge of theft of one box of meat.

The evidence showed that Andrew Pruitt and others at the Fort Lewis commissary were stealing meat on a continuing basis. On September 16, 1980, while the Fort Lewis' meat plant loading dock was under surveillance, FBI Agent John O'Neill observed a truck from Randy's Meats arrive with a delivery of meat. Moments later, Andrew Pruitt appeared, then walked over to a parking lot near some bushes where he waited for Long. When Long arrived, Pruitt pulled a box out from under his smock, and dropped the box on the floor of Long's car. The box made a loud noise

when it was dropped indicating that it was heavy. Pruitt stated, "Here is a little something for you."

Viewing the evidence in a light most favorable to the government, we find that the facts were sufficient for the jury to conclude that Long was guilty of the crime charged.

#### 9. *Jury Instructions*

##### A. *Jury Instructions 5, 8 and 22.*

Long asserts that three jury instructions were improper because they simply stated the text of the code sections under which Long was indicted, without an attempt to clarify the elements of those crimes.[8]

 The adequacy of jury instructions is determined by examining the instructions as a whole. *United States v. Skinner,* 667 F.2d 1306, 1310 (9th Cir.1982). Long's argument ignores several other instructions which adequately clarified the charges.

##### B. *The Multiple Conspiracy Instruction*

 Long asserts that the district court erred in failing to give his proposed multiple conspiracy instruction. Long relies on *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). There the Supreme Court held that when separate but related conspiracies are charged, "a precautionary instruction ... would be appropriate, perhaps required .... [t]he jury should take care to consider the evidence relating to each conspiracy separately from that relating to each other conspiracy charged." *Id.* at 769–70, 66 S.Ct. at 1250.

The instruction given to the jurors in this case cautioned them to consider each offense and the evidence pertaining to it separately. The district court gave instruction number three which provided in part that:

A separate crime or offense is charged against one or more of the defendants in

---

7. Long was given a longer sentence for theft than the other defendants in this case. He contends that the individual facts in his case should have led the court to give him less time in prison than his fellow defendants.

8. The code sections were 18 U.S.C. §§ 371, 641, and 1623.

each count of the indictment. Each offense, and the evidence pertaining to it, should be considered separately. The fact that you may find all or some of the accused guilty or not guilty of one of the offenses charged should not control your verdict as to any other offense charged.

The content of jury instructions is within the discretion of the trial judge. *United States v. Strand,* 574 F.2d 993, 995 n. 1 (9th Cir.1978). The trial judge properly cautioned the jury that it was to consider the related conspiracies separately because they were charged as separate offenses in the indictment.

### C. *Instruction on Intent*

Long challenges two instructions for their failure to "accurately reflect the intent requirement of 18 U.S.C. § 641.

Section 641 requires an "intent to appropriate [property] to a use inconsistent with the owner's rights and benefits." *Ailsworth v. United States,* 448 F.2d 439, 442 (9th Cir.1971). One jury instruction stated that it is an "essential element of each of the offenses charged ... [to show]: ... that the defendant acted with specific intent to convert said items to a use inconsistent with the rights of the lawful owner."

Instructions need not be given in the precise language requested by the defendant. *United States v. Skinner,* 667 F.2d at 1310. Although the district court refused to give Long's instruction on intent, the one given accurately reflected the intent element of § 641.

### D. *Deliberate Ignorance Instruction*

Long challenges the district court's addition to one of his requested instructions.

The language the court added is the so-called *"Jewell* deliberate ignorance" instruction, first approved in *United States v. Jewell,* 532 F.2d 697, 704 (9th Cir.1976) (*en banc*), *cert. denied,* 426 U.S. 951, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976). *Jewell* is still valid law and, therefore, we find that the instruction was not erroneous. *See United*

*States v. Nicholson,* 677 F.2d 706, 710 (9th Cir.1982).

### E. *Reading of the Indictment During the Jury Instruction*

Long asserts that, by reading the full grand jury indictment in its instructions, the district court biased the jury against the defendants. Long claims that the judge did not attempt to "balance his instructions."

The second jury instruction properly instructed the jury that the indictment was "not evidence of any kind against the defendant" and the jury was "not to draw any inference at all against the defendant" from the indictment. The district court did not err in reading the indictment to the jury as they were cautioned that it was not evidence.

We have reviewed each of the arguments presented by the appellants. We have concluded that none of the alleged errors compels reversal. The judgment of the district court is AFFIRMED.