985 F.2d 576
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Betty OSCO, Defendant-Appellant.
 No. 92-50221.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 7, 1993.
Decided Feb. 5, 1993.
 
 Appeal from the United States District Court for the Central District of California; No. CR 91-334-JSL-02, J. Sepncer Letts, District Judge, Presiding.
 C.D.Cal.
 AFFIRMED.
 Before JAMES R. BROWNING, POOLE and NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Convicted of conspiracy to defraud the United States in violation of 18 U.S.C. § 371 and sentenced to 18 months imprisonment and restitution to the Internal Revenue Service of $241,000, Betty Osco appeals both her conviction and her sentence. We affirm.
 
 INDICTMENT
 
 3
 Betty Osco (Betty) was charged with conspiracy with her son, William Osco (William), and William's employee, Robert Loya (Loya), to defraud the United States by assisting William in the evasion of the payment by William of income tax he admittedly owed for calendar years 1969, 1970, 1971, 1979 and 1981. Betty was alleged to have aided the evasion of these "assessed taxes" by concealing William's substantial income from Niks and Naks, a bookstore owned by him in Garden City, Idaho.
 
 
 4
 William was also charged with filing false federal income tax returns for the calendar years 1984, 1985, 1986, and 1987 in that in each of these years he failed to report his net profit from Niks and Naks and from Desert Skies Motel, another Garden City, Idaho property owned by him. The indictment alleged that Loya, the manager of the two Garden City businesses, filed returns from 1984, 1985, 1986 and 1987 falsely showing himself to be the owner of the two properties. Betty was charged with defrauding the United States by obstructing the Internal Revenue Service (the IRS) in the exercise of its lawful functions of computing, assessing levying and collecting income tax.
 
 FACTS
 
 5
 Evidence at trial, examined in the light most favorable to the government, established the following:
 
 
 6
 In 1984 William agreed to the entry of a Tax Court decision finding an income tax deficiency for the years 1969, 1970 and 1971 of approximately $15,000 and assessing several thousand dollars in penalties. He paid neither the taxes nor the penalties and interest and, as of August 1991, owed the IRS $87,000 for these three years. He filed a return for 1979 showing $16,000 due and a return for 1981 showing $71,000 due and paid neither amount. As of August 1991 he owed over $240,000 in taxes, penalties and interest for these years. From 1983 on, William did not have a bank account in his own name, lest the IRS attach it; he usually paid his bills in cash.
 
 
 7
 Cash came to William from Niks and Naks, a store devoted to pornography. Loya, its manager, performed a regular skim for its owner's benefit, sending William half or more of the receipts in cash and reporting only the remainder as the store's taxable income. Betty played a key role because she received the cash on William's behalf and then turned it over to him or paid his personal expenses with it. The cash skimmed and delivered to Betty during 1988 amounted to between $10,000 and $15,000 a month. In 1987 the skim was at least $10,000 per month.
 
 
 8
 Betty told an undercover agent of the IRS that William owed the government "a whole bunch of money" and added, "That's why everything is in my name." William's home in Malibu, California, was bought for him in Betty's name at a cost of $375,000. The purchase was made in 1986, a year William filed a federal return showing zero income. Betty told the real estate agent that the house was not in fact hers. William lived in the house and paid the utility bills, day-to-day expenses, and mortgage interest.
 
 ANALYSIS
 
 9
 The Evidence. The evidence was sufficient to establish the conspiracy to defraud the United States by obstructing the IRS with the pretense that William had no income to be taxed on and no assets to pay his delinquent taxes.
 
 
 10
 Betty's Admissions. Betty's admissions, made in the course of the conspiracy, required no corroboration to convict her, Buford v. United States, 272 F.2d 483, 486 n. 1 (9th Cir.1959) and were in any case corroborated by other admissions made by William and Loya.
 
 
 11
 The IRS's Collection Procedures. Betty contends that the district court abused its discretion in refusing the request of William to order production of the IRS collection files relating to him for the years 1964-1971 and 1979-1989. Betty did not join in this request and cannot raise it on appeal. United States v. Long, 706 F.2d 1044, 1051-52 (9th Cir.1983). In any event, the information was irrelevant to Betty's defense.
 
 
 12
 The Sentence. Betty objects to the court's way of estimating the profits from Niks and Naks in arriving at the amount of tax William evaded and for which she is liable. The skim from the store was estimated by the court to have been $10,000 a month for eight months of 1988 and all of 1987. The court then reduced the amount for 1986 by the extent the consumer price index had risen from 1986 to 1987. Similarly, for earlier years, the court made reductions, using 1987 as the base from which the reductions were made. The court also made a second adjustment downwards: video machines were introduced into the store in May 1986, and the court estimated that business became 50% more profitable. The profits prior to May 1985 were estimated in accordance with this belief. A third adjustment was made for 1980 and earlier years when the store was open only six days a week, and a final adjustment downwards was made for the first two years, when profits would probably have been lower. In this fashion the court arrived at estimates for unreported income from the store back to 1975, when the court found the conspiracy began. The total was $660,037. Applying a tax rate of 28%, the court found a tax loss of $184,810. To that it added $56,610 for William's assessed but unpaid taxes. The total tax loss which Betty had made possible was thus estimated to be $241,300 leading to a base offense level of 13, U.S.S.G. § 2T1.9(a).
 
 
 13
 On appeal Betty makes two objections: the court's method was "arbitrary" and William's unpaid taxes should not have been added because Betty was unaware of them.
 
 
 14
 The figures, while an estimate, were not arbitrary. It was on the basis of William and Betty's own statements in the course of the conspiracy that the court found that skim had been $10,000 a month in 1988 and 1987. The adjustments downwards for the prior years were conservative and rational and indeed suggested by Betty's counsel. Betty has nothing to complain of. Betty was well aware of William's unpaid taxes as she acknowledged when she explained why everything was in her name.
 
 
 15
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3