24 F.3d 250
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Jesus FELIX-RODRIGUEZ, Defendant-Appellant.
 No. 93-30082.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 3, 1994.
Decided May 5, 1994.
 
 Before: WRIGHT, CANBY, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Jesus Felix-Rodriguez (Felix) appeals his jury conviction for conspiracy to distribute cocaine (Count One) in violation of 21 U.S.C. Sec. 846; distribution of cocaine base (Counts Two through Five), and possession of cocaine base with intent to distribute (Count Six), all in violation of 21 U.S.C. Sec. 841. Felix raises numerous arguments on appeal.[1] We affirm.
 
 A. Sentencing Issues[2]
 1. Type of Drugs (Cocaine or Cocaine Base)
 
 3
 Felix claims that the district court should have calculated his offense level using cocaine, not cocaine base (a.k.a. "crack"), because the distribution of crack cocaine was not reasonably foreseeable by him. Where drug conspiracies are involved, the district court may take into account co-conspirator activities which are reasonably foreseeable, including the type of drug involved. U.S.S.G. Sec. 2D1.1, comment. (n. 12) (1992) ("Types and quantities of drugs not specified in the count of conviction may be considered in the offense level."). The application note then cites to the relevant conduct provision, which states that "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity" must be considered in determining the offense level. See Sec. 1B1.3(a); see also United States v. Johnson, 956 F.2d 894, 906 (9th Cir.) (defendant's sentence may be based upon criminal activity of others if that activity was reasonably foreseeable by defendant), amended on other grounds, 969 F.2d 849 (9th Cir.1992).
 
 
 4
 At sentencing, the district court calculated Felix's offense level based upon crack cocaine. In concluding that the distribution of crack cocaine was reasonably foreseeable by Felix, the district court relied upon John's testimony that he told Felix he preferred to buy white cocaine rather than tan because white cocaine "rocks up better than tan." The district court further concluded that Felix supplied at least 1.5 kilos of cocaine after he knew that the Applewhites were making it into rock cocaine.
 
 
 5
 The record supports these conclusions. Both John and Roslynd had discussed with Felix the fact that they intended to make the cocaine powder into crack. John testified that he had told Felix he preferred to buy white rather than tan cocaine because it rocked up better. Roslynd also told Felix that she was rocking up the cocaine before distributing it. Given such evidence, the district court properly concluded that the distribution of cocaine base was reasonably foreseeable by Felix. See Johnson, 956 F.2d at 906.
 
 2. Amount of Cocaine
 
 6
 For purposes of sentencing, each co-conspirator is not held accountable for the quantity of drugs distributed by the entire conspiracy. United States v. Petty, 992 F.2d 887, 890 (9th Cir.1993). Rather, the offense level is determined on the basis of the quantity of drugs (1) which the co-conspirator reasonably foresaw, or (2) which fell within the scope of his agreement with the other co-conspirators. Id.; see also U.S.S.G. Sec. 1B1.3.
 
 
 7
 The district court properly determined the amount of drugs attributable to Felix. The PSR calculated an offense level of 38 from the distribution of at least 126 ounces (approximately 3.5 kilos) of cocaine base. Based upon the trial testimony, the district court found that Felix supplied more than 1.5 kilos of cocaine to John and/or Rosylnd Applewhite knowing that they were going to make it into crack cocaine. After reviewing the trial transcript, we agree the Government established that Felix supplied at least 1.5 kilos to either John and Roslynd, or to Roslynd alone between November 1991 and February 1992. The Guidelines provide that where at least 1.5 kilograms but less than 5 kilograms of cocaine base are involved in the drug offense, the base offense level is 38. U.S.S.G. Sec. 2D1.1(c)(3) (1992).[3] The district court did not clearly err in concluding that at least 1.5 kilos were involved, and therefore it properly sentenced Felix to an offense level of 38. See United States v. Upshaw, 918 F.2d 789, 791 (9th Cir.1990) (declined to reject district court's factual findings regarding quantity of drugs produced in methamphetamine lab because not left with definite and firm conviction that a mistake had been made), cert. denied, 499 U.S. 930 (1991).
 
 3. Explicit Findings
 
 8
 Contrary to Felix's argument, we find that the district court made sufficient and explicit factual findings that he was actually responsible for relevant conduct under Sec. 1B1.3. See United States v. Conkins, 9 F.3d 1377, 1386-87 (9th Cir.1993); see also United States v. Chavez-Gutierrez, 961 F.2d 1476, 1480-81 (9th Cir.1992). The record supports those findings. See United States v. Navarro, 979 F.2d 786, 789 (9th Cir.1992) (district court may not rely upon conclusory statements unsupported by the evidence when it calculates Guideline sentence). Unlike Conkins and Navarro, the district court's findings in this case were more than general, conclusory statements. Cf. Conkins, 9 F.3d at 1387 (remand necessary where district court made no findings as to extent of several defendants' relevant conduct and involvement in large conspiracy); cf. Navarro, 979 F.2d at 786 (district court's findings, which were basis for sentence, unsupported in record). Finally, the district court did not merely adopt the jury's findings regarding quantity as Navarro prohibits, 979 F.2d at 788 (district court must determine amount of drugs involved in conspiracy attributable to defendant before imposing sentence); rather, it relied upon the evidence presented at trial.
 
 
 9
 4. Reasons for Imposing Sentence within Guideline Range
 
 
 10
 When, as in this case, the span of the particular Guideline range exceeds twenty-four months, the sentencing judge must state its reasons for choosing a sentence within that range. See United States v. Howard, 894 F.2d 1085, 1092 (9th Cir.1990); see also 18 U.S.C. Sec. 3553(c). In its statement of reasons, the district court ruled that it selected the specific point within the range because of Felix's past history of involvement with the sale of cocaine. Because the district court provided its reasons as required under Sec. 3553(c), it did not err in selecting the 275-month sentence.
 
 5. Standard of Proof
 
 11
 The Government sustained its burden to prove by a preponderance of evidence the quantity of drugs involved for sentencing purposes. United States v. Harrison-Philpot, 978 F.2d 1520, 1524 (9th Cir.1992) (district court is to apply preponderance of the evidence standard to determine quantity of drugs involved in a conspiracy for purposes of sentencing), cert. denied, 113 S.Ct. 2392 (1993). Our review of the record confirms the district court's finding that Felix distributed at least 1.5 kilos of cocaine. Moreover, the exception that would require proof by clear and convincing evidence when a sentencing factor has a disproportionate effect on the sentence relative to the offense of conviction does not apply here. See United States v. Restrepo, 946 F.2d 654, 659 (9th Cir.1991) (en banc), cert. denied, 112 S.Ct. 1564 (1992).
 
 B. Sufficiency
 
 12
 Felix claims that the Government proved only that he had a buyer-seller relationship with Roslynd. Relying upon out-of-circuit authority, he argues that such a relationship is insufficient to establish his involvement in a conspiracy. See United States v. Blankenship, 970 F.2d 283, 285 (7th Cir.1992) (mere buyers and sellers are not automatically co-conspirators); United States v. Beckham, 968 F.2d 47, 51 (D.C.Cir.1992) (occasional purchase from supplier as an alternative source of drugs does not constitute conspiracy); United States v. Douglas, 818 F.2d 1317, 1321 (7th Cir.1987) (proof of mere buyer-seller relationship without more is inadequate to tie buyer to larger conspiracy).
 
 
 13
 We need not determine whether a single buyer-seller transaction constitutes a conspiracy because the evidence established that Felix was involved in more than an isolated buyer-seller transaction. See United States v. Houser, 929 F.2d 1369, 1372 (9th Cir.1991) (buyer-seller rule not implicated where evidence established that defendant was one of several individuals who supplied drugs to person in the business of dealing drugs and there was more than an isolated drug transaction involved). John testified that while he was in prison with Felix, they had discussed doing "business" together when they were released. Felix told John his price range for selling kilos of cocaine. John informed Roslynd that Felix could supply them with drugs and she in turn spoke to Felix about obtaining cocaine from him. Roslynd was in the business of dealing cocaine and Felix was one of her suppliers. She testified that she would obtain cocaine from Felix and then redistribute the cocaine. Moreover, Felix supplied large quantities of cocaine which supports the inference that Felix was aware that the cocaine was for redistribution and not for personal consumption. See Houser, 929 F.2d at 1372 (fact that defendant sold as much as an ounce supports finding that drugs were sold for redistribution and not for personal use.)
 
 
 14
 We conclude that there was sufficient evidence to support the conspiracy conviction. See United States v. Penagos, 823 F.2d 346, 348 (9th Cir.1987); see also United States v. Ray, 930 F.2d 1368, 1371 (9th Cir.1991) ("The agreement may be inferred from the facts and circumstances of the case."). Once there is evidence that a conspiracy exists, a defendant may be convicted of knowing participation in the conspiracy even though evidence of his connection is slight, as long as his connection is established beyond a reasonable doubt. Ray, 930 F.2d at 1371.
 
 
 15
 We also reject Felix's argument that there was insufficient evidence to establish his guilt on the substantive cocaine distribution and possession counts. "[A] party to an unlawful conspiracy may be held responsible for substantive offenses committed by his co-conspirators in furtherance of the unlawful project, even if the party himself did not participate directly in the commission of the substantive offense." United States v. Crespo De Llano, 838 F.2d 1006, 1019 (9th Cir.1987). The Government established that Felix was responsible for supplying approximately 750 grams of cocaine in November 1991 as charged in Count Two; at least one kilo from December 1991 through January 1992 as charged in Counts Three and Four; and one kilo on February 2 and 8, 1992, as charged in Counts Five and Six. It was also shown at trial that those drugs were distributed to various individuals in the Seattle area. Because there was sufficient evidence that Felix was involved in the conspiracy, he was properly convicted of the underlying substantive distribution offenses, even absent evidence of his direct participation.
 
 C. Venue
 
 16
 Venue is proper in any district where overt acts in furtherance of the conspiracy occurred. United States v. Meyers, 847 F.2d 1408, 1411 (9th Cir.1988). Moreover, "[i]t is not necessary that [the defendant] have entered or otherwise committed an overt act within the district, as long as one of his co-conspirators did." Id. Felix's co-conspirators, John and Roslynd, committed overt acts in the Western District of Washington. Felix was also on notice about the extent of the conspiracy for which he was charged because the indictment charged that the conspiracy occurred within the Western District of Washington and elsewhere. See id. 1410 (indictment charged that conspiracy occurred in Montana and "elsewhere").
 
 D. Pinkerton Instruction
 
 17
 Felix's claim that the Pinkerton instruction should have contained a reasonable foreseeability element lacks merit. We rejected a similar argument in United States v. Roselli, 432 F.2d 879, 894 n. 25 (9th Cir.1970), cert. denied, 401 U.S. 924 (1971), where we held that reasonable foreseeability language may be added to a Pinkerton instruction if requested, but its omission is not reversible error. Id.; see also Ninth Circuit Model Jury Instruction 8.05E, Comment.[4]
 
 
 18
 As the Comment to 8.05E indicates, the language may be added if commission of the co-conspirator conduct is not reasonably foreseeable as a necessary or natural consequence of the conspiracy. In this case, the substantive drug possession and distribution charges were clearly foreseeable consequences of the conspiracy to distribute cocaine, making it unnecessary to include that language in the instruction.
 
 
 19
 The district court's Pinkerton instruction followed Ninth Circuit Model Jury Instruction 8.05E almost verbatim. We upheld the validity of a similar Pinkerton instruction in United States v. Vasquez, 858 F.2d 1387, 1393 n. 3 (9th Cir.1988), cert. denied, 488 U.S. 1034 (1989). Furthermore, Felix did not request the reasonable foreseeability language. Consequently, the omission of the reasonable foreseeability language did not constitute error, plain or otherwise.
 
 E. Sufficiency and Variance of Indictment
 
 20
 To the extent that Felix's sufficiency challenge is based upon the form of the indictment, he has waived the issue because he did not raise it in the district court. See Fed.R.Crim.P. 12(b)(2), 12(f); see also United States v. Gordon, 844 F.2d 1397, 1400 (9th Cir.1988) (appellants waived objection to form of indictment and right to require Government to divide count into two separate conspiracy counts); United States v. Calabrese, 825 F.2d 1342, 1346-47 (9th Cir.1987) (waiver of right to object to indictment as unconstitutionally vague, ambiguous, and duplicitous when not raised in district court). Nor do we find plain error. See id.
 
 
 21
 To the extent that Felix's insufficiency argument is based upon the failure of the indictment to state an offense, Felix has not waived the issue. See id. at 1347. Although failure of an indictment to state sufficiently the crimes charged is a fundamental defect which can be raised at any time, such a challenge must be made at the earliest possible moment. United States v. Pheaster, 544 F.2d 353, 361 (9th Cir.1976), cert. denied, 429 U.S. 1099 (1977). Consequently, we will liberally construe the tardily challenged indictment here in favor of validity. Id. ("[W]hen an indictment is not challenged before the verdict, it is to be upheld on appeal if the necessary facts appear in any form or by fair construction can be found within the terms of the indictment." (emphasis added) (internal quotations and citations omitted)).
 
 
 22
 A liberal review of the indictment in this case does not warrant reversal. It alleges the elements of the offenses charged and sufficient facts to inform of the specific offense for which Felix is charged. United States v. Bohonus, 628 F.2d 1167, 1173 (9th Cir.), cert. denied, 447 U.S. 928 (1980). Felix relies upon United States v. Cecil, 608 F.2d 1294 (9th Cir.1979), in which we held that an indictment was fatally defective because it did not contain specific facts or circumstances pertaining to the conspiracy. Id. at 1296-97. Cecil does not require us to reverse. The appellants in Cecil, unlike Felix here, raised timely objections to the indictment. Id. at 1296. Additionally, the indictment in this case, unlike that in Cecil, contains overt acts which provide a limiting focus. See id. (indictment did not allege overt acts conducted in furtherance of conspiracy).
 
 
 23
 In United States v. Laykin, 886 F.2d 1534 (9th Cir.1989), cert. denied, 496 U.S. 905 (1990), we held that an indictment was not fatally defective, even though it contained open-ended dates, because it listed eighteen overt acts which limited the time frame covered by the indictment and gave the defendants notice of the scope of charges against them. Id. at 1542. Similarly, the indictment in this case is not fatally defective because the overt acts alleged provide a limitation on the scope of the charges against Felix. The overt acts alleged conduct between November 1991 and February 8, 1992. This discrete time period was sufficient for Felix to prepare an adequate defense. See id. Accordingly, Felix suffered no prejudice. See United States v. Normandeau, 800 F.2d 953, 958 (9th Cir.1986) ("The key question in these inquiries is whether an error or omission in an indictment worked to the prejudice of the accused.").
 
 
 24
 We also reject Felix's claim that there was a prejudicial variance between the proof at trial and the charges contained in the indictment. He argues that the indictment charged a conspiracy in Western Washington with one named co-conspirator, but the Government proved a conspiracy with sales in California, Oklahoma and Arizona with other co-conspirators. Our decision in United States v. Durades, 607 F.2d 818, 819 (9th Cir.1979) (impermissible variance when proof at trial showed that two separate conspiracies had occurred during the time period charged in the indictment, but it showed that defendant was a member of only one of those conspiracies), does not require reversal. The defendant in Durades established that the variance affected one of his substantial rights, i.e., the right to be tried in the proper venue. We reversed because overt acts for the separate conspiracy in which the defendant was involved occurred in a different district from the one in which he was tried. Id. at 820.
 
 
 25
 There was no such impermissible variance in this case. The proof at trial established that Felix was involved in a conspiracy to distribute cocaine in the Western District of Washington. He supplied Roslynd and/or John with cocaine in California and they distributed that cocaine to O.G. in Washington. Roslynd testified that when Felix was away for Christmas in December 1991 she and "Run" distributed cocaine which "Run" had obtained from another source, Bob. However, this evidence was merely collateral and did not establish the existence of two separate conspiracies. The proof adduced at trial showed Felix's involvement in the one conspiracy charged, covering the period from November 1991 through February 1992. As we noted above, venue was proper because the overt acts occurred in the Western District of Washington. Consequently, Felix's substantial right to be tried in the proper district was not violated. Nor was Felix prejudiced by proof of criminal acts committed by those not a party to the illegal activity.
 
 F. Bill of Particulars
 
 26
 A bill of particulars was not necessary in this case because the indictment apprised Felix of the specific charges against him, thereby minimizing the danger of surprise at trial; aided him in preparing for trial; and protected him against double jeopardy. See United States v. Long, 706 F.2d 1044, 1054 (9th Cir.1983). The indictment contained the names of alleged co-conspirators, the approximate dates on which the alleged illegal conduct occurred, and the overt acts that comprised the illegal activity. See United States v. DiCesare, 765 F.2d 890, 897-98 (9th Cir.) (bill of particulars not warranted when defendant seeks to obtain co-conspirator names, exact dates and overt acts), amended on other grounds, 777 F.2d 543 (1985).
 
 
 27
 The Government filed a response to Felix's motion for a bill of particulars which provided a more detailed statement of the charges against Felix and the Government's theory. See Long, 706 F.2d at 1054 ("Full discovery will obviate the need for a bill of particulars."). Moreover, Felix "fails to demonstrate surprise, prejudice, or an increased risk of double jeopardy stemming from the alleged shortcomings of the indictment." United States v. Burt, 765 F.2d 1364, 1367 (9th Cir.1985). The indictment apprised Felix of the charges against him and enabled him to prepare an adequate defense. DiCesare, 765 F.2d at 897. Nothing more is required. Therefore, the district court did not abuse its discretion in denying Felix's motion for a bill of particulars. See Long, 706 F.2d at 1054.
 
 G. Prior Conviction
 
 28
 Felix argues that the district court erred in admitting his prior 1989 California state conviction for possession with intent to distribute cocaine because it was constitutionally defective[5] and its admission violated Rule 404(b). For sentencing purposes, the district court ruled that the state conviction was unconstitutional, but did not give reasons for so ruling. In Burgett v. Texas, 389 U.S. 109 (1967), the Supreme Court held that it was reversible error to permit a prior state conviction to be used against the defendant either to support guilt or enhance punishment where the conviction was presumptively void because it was obtained in violation of the defendant's right to counsel. Id. at 111-15. The defendant in Burgett was not represented by counsel and there was no indication on the record that he waived his right to counsel. Id. at 112. Thus, the Court concluded, it is inherently prejudicial to admit a constitutionally inform guilty plea against a defendant at a subsequent trial on a new offense. See id. at 115.
 
 
 29
 Unlike the plea in Burgett, Felix's no contest plea is not presumptively void. Felix states in his declaration that at some unspecified point during the sentencing hearing he attempted to ask his attorney a question because he thought what the interpreter was saying was not what his attorney had told him. It is clear that Felix was represented by an attorney before, during and after the state proceeding, but that at one point during the hearing he did not have the opportunity to confer with his attorney. It is also clear that he was informed of and waived his rights. Nor was the prior state conviction's constitutional defect, if any, inherently prejudicial.
 
 
 30
 Even assuming admission of Felix's prior conviction constituted error, it was harmless beyond a reasonable doubt. See id. (applying constitutional harmless error standard); see also Miller v. Vasquez, 868 F.2d 1116, 1118 (9th Cir.1989) (conducted Chapman harmless error review of a California petitioner's due process claim that he had been denied jury consideration of an alleged prior felony). In Burgett, the Court concluded that admission of a prior conviction, which was unconstitutional in violation of right to counsel, was inherently prejudicial. Thus, it could not conclude that instructions to disregard it made the error harmless beyond a reasonable doubt. 389 U.S. at 115. Because the prior state conviction is neither facially invalid, nor inherently prejudicial, we apply the harmless error analysis, and after reviewing the record, we conclude that any error in admitting the prior conviction did not contribute to the verdict obtained beyond a reasonable doubt. See Chapman v. California, 386 U.S. 18, 24 (1967).
 
 
 31
 Similarly, we reject Felix's contention that admission of the prior conviction was error under Rule 404(b). Prior bad act evidence can only be admitted under Fed.R.Evid. 404(b) if that evidence: (1) tends to prove a material point; (2) is not too remote in time; (3) is based upon sufficient evidence; and, (4) in some cases, is similar to the offense charged. United States v. Bibo-Rodriguez, 922 F.2d 1398, 1400 (9th Cir.), cert. denied, 111 S.Ct. 2861 (1991); see also United States v. Houser, 929 F.2d 1369, 1373 (9th Cir.1991).
 
 
 32
 We have "consistently held that evidence of a defendant's prior possession or sale of narcotics is relevant under Rule 404(b) to issues of intent, knowledge, motive, opportunity, and absence of mistake or accident in prosecutions for possession of, importation of, and intent to distribute narcotics." United States v. Mehrmanesh, 689 F.2d 822, 832 (9th Cir.1982). The district court properly held that Felix's prior state conviction for possession of cocaine with intent to distribute was admissible under Rule 404(b) to prove issues relevant to the substantive charges, i.e., knowledge and intent. Nor did the district court err in deciding that its probative value outweighed its prejudicial effect. See Bibo-Rodriguez, 922 F.2d at 1400-01. Moreover, the district court instructed the jurors on the limited purpose for which they could consider the prior conviction.
 
 
 33
 Felix next contends that the district court erred in failing to issue a contemporaneous limiting instruction with the admission of his prior conviction. We rejected a similar argument in United States v. Rewald, 889 F.2d 836, 865 (9th Cir.1989) (district court did not abuse its discretion in refusing to give a contemporaneous cautionary instruction when evidence of a witness's guilty plea was admitted), amended on other grounds, 902 F.2d 18 (9th Cir.), cert. denied, 498 U.S. 819 (1990). Although the most effective practice is to issue a cautionary instruction when the prior conviction is admitted, and again in the final instructions, the district court did not abuse its discretion by giving the cautionary instruction only in its final charge to the jury. See id.
 
 H. Roslynd's Presentence Report
 
 34
 The district court did not err when it refused to permit disclosure of Roslynd's PSR pursuant to Brady v. Maryland, 373 U.S. 83 (1963). "Prosecutors have a duty under due process to disclose evidence that is both favorable to the accused and material to either guilt or punishment." United States v. Streit, 962 F.2d 894, 900 (9th Cir.), cert. denied, 113 S.Ct. 431 (1992). Under Brady, defendants are also entitled to evidence which would serve to impeach key Government witnesses. Id. "Failure to disclose such exculpatory or impeachment evidence requires reversal if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." Id. (internal quotations omitted).
 
 
 35
 After reviewing Roslynd's PSR, we find no error. See id. (affirming district court's refusal to permit disclosure of certain reports after it had conducted in camera.) The PSR contains neither exculpatory nor impeachment evidence which would require disclosure under Brady. It contains background information on Roslynd, but does not provide any information which the defense could have used to impeach her testimony. Indeed, she had no prior arrests and "an impressive education and employment record."
 
 I. Hearsay Statements
 
 36
 Statements by party-opponents are admissible as non-hearsay under Fed.R.Evid. 801(d)(2)(A). Thus, the district court did not err in admitting Felix's taped telephone conversation. See United States v. Castro, 887 F.2d 988, 999-1000 (9th Cir.1989) (party-opponent statements are admissible provided they are offered against the party and are the party's own statement).
 
 
 37
 We have held that statements which provide necessary background information but that are not offered for the truth of the matter asserted are admissible under Fed.R.Evid. 801(c). See United States v. Echeverry, 759 F.2d 1451, 1457 (9th Cir.1985) (such background statements are not hearsay and are properly admissible because their probative value is independent of their veracity). Several of Felix's hearsay objections fall within this category of admissible evidence: (1) Officer Ringer's testimony regarding O.G. was offered to establish why the investigation came to focus on Felix;[6] and, (2) O.G.'s conversation with Roslynd after O.G. was arrested provided background to help set up the sting.
 
 
 38
 John's double hearsay statement (which was admitted through Roslynd's testimony) that Felix had access to cocaine was an out-of-court statement offered to prove the truth of the matter asserted and does not fall within any hearsay exception. However, John testified about Felix's statement that Felix had access to cocaine. This statement was non-hearsay and admissible as a party-opponent statement. Accordingly, because the same information was properly introduced, we find that this error was harmless. See United States v. Dean, 980 F.2d 1286, 1289 (9th Cir.1992) (hearsay errors are harmless if it is more probable than not that erroneously admitted evidence did not materially affect verdict). Similarly, although the agents' testimony regarding Roslynd's post-arrest statement that Felix was her supplier was inadmissible hearsay, Roslynd testified that Felix was her supplier, making that error harmless as well.
 
 
 39
 Finally, Felix argues that it was improper to admit Agent Lowery's testimony regarding the search of Felix's residence because it was hearsay and not based upon her personal knowledge. Nonetheless, this testimony was in response to testimony elicited during the defense's direct examination of Lowery. It was in rebuttal, after the defense opened the door, that the testimony was introduced. See United States v. Beltran-Rios, 878 F.2d 1208, 1212 (9th Cir.1989) (Government allowed "to introduce otherwise excludable testimony when the defendant 'opens the door' by introducing potentially misleading testimony."). The Government was properly permitted to rebut potentially misleading testimony.
 
 J. Drug Dealer Profile
 
 40
 Felix objected to Agent Lowery's testimony only on the ground that it was beyond the scope of direct and not on the ground that it constituted improper drug profile evidence. Thus, he has waived this argument and we find that it was not plain error to admit the testimony. We have upheld the use of drug profile evidence where it was necessary to rebut the inference created by the defendant that his lifestyle was inconsistent with that of a drug courier. Beltran-Rios, 878 F.2d at 1211-13. The testimony to which Felix objects was elicited as rebuttal after Felix opened the door by introducing potentially misleading testimony. See id. at 1212. Agent Lowery testified that a search of Felix's apartment did not produce drugs or drug paraphernalia. The Government was entitled to introduce the testimony in rebuttal.
 
 
 41
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In this memorandum disposition, we resolve all but one of the issues Felix has raised on appeal. We address the remaining issue concerning the replay of a tape-recorded conversation in an opinion
 
 
 [2]
 Because Felix was sentenced on February 8, 1993, we apply the 1992 version of the Sentencing Guidelines. See United States v. Warren, 980 F.2d 1300, 1304 (9th Cir.1992) (district court is to apply version of Guidelines in effect at sentencing, unless that version violates Ex Post Facto Clause; if Ex Post Facto Clause is violated, defendant is to be sentenced under Guidelines in effect at time of offense), cert. denied, 114 S.Ct. 397 (1993). The PSR used the 1991 Guidelines and the district court adopted the PSR with certain exceptions. Although the sentence does not change whether the 1991 or 1992 version is used, an amendment to the 1992 version consolidated the provision pertaining to attempts and conspiracies in drug cases (previously Sec. 2D1.4) with the sections applicable to the substantive drug offenses, Sec. 2D1.1. See United States v. Mkhsian, 5 F.3d 1306, 1313 n. 8 (9th Cir.1993). There is no substantive difference between the two versions because the application notes to Sec. 2D1.1 adopt the language used in the previous Sec. 2D1.4. Compare U.S.S.G. Sec. 2D1.4, & comment. (ns. 1-2) (1991) with U.S.S.G. Sec. 2D1.1, comment. (n. 12) (1992)
 
 
 [3]
 This calculation is the same under the 1991 Guideline version
 
 
 [4]
 Ninth Circuit Model Jury Instruction 8.05E, Comment provides:
 If warranted by the evidence, additional language may be added to the instruction to inform the jury that a conspirator may not be convicted of a substantive offense committed by a co-conspirator if commission of the offense could not be reasonably foreseen as a necessary or natural consequence of the unlawful agreement.
 
 
 [5]
 We reject the Government's argument that Felix waived this issue because he did not raise it during the oral motion in limine. The fact that he raised the issue in his written motion is sufficient to preserve it for appeal
 
 
 [6]
 Felix did not object on hearsay grounds to this testimony, and thus the plain error standard of review applies